## No. 79SA362

## The People of the State of Colorado v. Randy C. Nees

(615 P.2d 690)

Decided August 18, 1980.          Rehearing denied September 15, 1980.

Craig S. Westberg, District Attorney, Robin K. Auld, Assistant, John D. Phillips, Deputy, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Terri L. Brake, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

Defendant Randy C. Nees, in a consolidated appeal, challenges his convictions in the District Court of La Plata County for aggravated robbery[1] (No. CR-587, the Holiday Inn robbery) and for aggravated robbery and habitual criminal (No. CR-588, the Ramada Inn robbery).[2] The defendant contends that the trial court should not have permitted either an

---

[1] Section 18-4-302, C.R.S. 1973 (current version in 1978 Repl. Vol. 8).

[2] In No. CR-587, the defendant was sentenced to the Colorado State Penitentiary for a term of not less than ten nor more than fifteen years, to be served concurrently with a federal sentence in another case. In No. CR-588, the defendant was sentenced as an habitual criminal to the penitentiary for a term of not less than twenty-five nor more than forty years, to run concurrently with all other sentences.

in-court identification or testimony about the line-up in either of the aggravated robbery trials because the line-up was impermissibly suggestive and there was an inadequate showing of an independent basis for the in-court identification of the defendant by the witness. We find the line-up was not impermissibly suggestive and affirm the convictions for aggravated robbery in both cases.

The defendant also contends that the trial court should have dismissed habitual criminal charges as outside the scope of the statute [section 16-13-101, C.R.S. 1973 (1978 Repl. Vol. 8, current version in 1979 Supp.)] because they relate to offenses committed after the one for which he was being tried. We agree and reverse the habitual criminal conviction in No. CR-588.

The F.B.I. and local law enforcement officers suspected the defendant had committed extortion of a Durango bank on March 30, 1976. Their investigation of the extortion uncovered evidence linking the defendant to a series of robberies in Durango, including the Ramada Inn on February 11, 1976, and the Holiday Inn on March 24, 1976.

On March 30, 1976, the defendant was arrested for the bank extortion. While in custody on March 31, 1976, he was advised of his *Miranda*[3] rights with regard to the robberies. The prosecution requested a court order for non-testimonial identification evidence (a line-up) under Crim. P. 41:1. The order authorizing the line-up noted there was probable cause to believe the defendant committed the aggravated robberies.

On April 1, 1976, the Durango police conducted a line-up, and the victims of the robberies identified the defendant. The police did not take photographs or keep any records of the line-up. The next day, the prosecution filed an information charging the defendant with the robberies.

Nees was convicted on May 28, 1976 in federal court for the March 30, 1976, bank extortion. On March 2, 1977, he was found guilty of the March 24, 1976 Holiday Inn robbery. The day he was sentenced for that robbery, the prosecution added habitual criminal counts based on the federal conviction and the Holiday Inn conviction to the information for the February 11, 1976, Ramada Inn aggravated robbery. Subsequently, a jury returned guilty verdicts on the aggravated robbery and habitual criminal counts.

## I.

Testimony about a line-up may be challenged in a pre-trial hearing or at trial on the basis that the line-up was unduly suggestive. From police and witness testimony at the suppression hearing and trials we know that each victim viewed the line-up separately. They first saw the participants in full view and then wearing masks and hats which matched the

---

[3] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

descriptions given by the victim. Each participant repeated the robber's words.

In *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the United States Supreme Court held that a pre-trial identification would be unduly suggestive if it gave "rise to a very substantial likelihood of irreparable misidentification" 390 U.S. at 384. *See also Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The likelihood of misidentification is determined on a case-by-case basis, with the court reviewing the totality of the circumstances. *People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977). Here the testimony indicated that there was no gross disparity in height or build among the participants in the line-up. All were dressed alike, even when they donned hats and masks similar to those worn by the robber. Although there was some difference in age among the participants, the testimony does not indicate that the line-up was conducted in a manner which "suggested" a culprit to the victims. From the totality of the circumstances we conclude that the line-up was not impermissibly suggestive. *Simmons, supra; Pickett, supra.*

Because we find that the line-up was properly conducted, we do not need to consider whether there was an independent basis for the in-court identification of the defendant by the witnesses. Testimony about the line-up and the in-court identification were properly admitted.

## II.

The District Attorney amended the information for the Ramada Inn robbery to add habitual criminal counts when the defendant was convicted for criminal incidents occurring after the Ramada Inn robbery. The trial court denied the defendant's motion to dismiss the new counts, and a jury found the defendant guilty of being an habitual criminal under section 16-13-101, C.R.S. 1973 (1978 Repl. Vol. 8, current version in 1979 Supp.).

Section 16-13-101 provides:

"(1) Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in the state penitentiary for a term of not less than twenty-five years nor more than fifty years."

The trial court interpreted the statutory language, "who, within ten years *of* the date of the commission of the said offense, has been twice previously convicted," to mean that a conviction may be ten years before or

after the commission of the offense and be "within" the statutory period.[4] We disagree.

We interpret "twice previously convicted" to refer back to "commission of the said offense." Thus, the ten year limitation applies only to convictions previous to the commission of the offense subject to the habitual criminal penalty enhancement. Therefore, in the instant case, it was improper for the trial court to have allowed convictions which were sustained after the commission of the subject crime to be the basis for habitual criminal counts.

There are two reasons for our statutory interpretation. First, the habitual criminal statute shall be narrowly construed in favor of the accused. *Smalley v. People,* 134 Colo. 360, 304 P.2d 902 (1956). Second, the policy of the habitual criminal statute is to punish repeat offenders. *People v. District Court,* 192 Colo. 375, 559 P.2d 235 (1977).

The general rule is that penalty enhancement statutes for repeat offenders apply only if the presently charged offense was committed *after* there had been a *conviction* of any offenses sought to be used as a basis for the penalty enhancement. *See, e.g., People v. Phillips,* 56 Ill. App.3d 689, 371 N.E.2d 1214, 14 Ill. Dec. 161 (1978); *State v. Neal,* 347 So.2d 1139 (La. 1977); *Cooper v. State,* 259 Ind. 107, 284 N.E.2d 799 (1972); *State v. Midell,* 40 Wisc.2d 516, 162 N.W.2d 54 (1968). *But see Strode v. State,* 259 Ark. 859, 537 S.W.2d 162 (1976); *United States v. Hilliard,* 366 A.2d 437 (D.C. 1976).

"Traditional American principles of criminal responsibility of an individual for his conduct do not permit the state to convert a formal charge against him for a less serious offense, into a charge for a more serious offense, on the legal basis of a change of status or other incident which occurs *after* the initial offense charged. Criminal conduct ordinarily subjects an individual to the imposition of criminal penalties applicable to the act at the time it is committed." *State v. Neal, supra,* 347 So.2d at 1141.

The deterrent purpose of the statute is to put the defendant on notice that future conduct of the same kind will result in more severe penalties. *People v. District Court, supra.* Enhanced penalty statutes warn a first offender of the consequences of a second conviction. Moreover, it is not known legally that an offense has been committed until there is a conviction. An enhanced penalty should not be imposed until the offender has the opportunity to reform because of the salutary discipline from the punishment for the first conviction. *People v. Phillips, supra.*

---

[4] To read the statute as the trial court did makes "previously" refer back to "convicted . . . of any felony" in the first two lines of the statutory provision, *supra.* Under that construction, any convictions prior to the date of the conviction in the habitual criminal proceeding could be considered for enhancement purposes.

A conviction such as the one here, which imposes the more severe penalty for the first offense, does not comply with the statutory objectives.

The trial court erred in denying the defendant's motion to dismiss the habitual criminal charges. Therefore, we reverse the defendant Randy Nees' habitutal criminal conviction in No. CR-588.

Judgment in No. CR-587 affirmed.

Judgment in No. CR-588 for aggravated robbery affirmed, and for habitual criminal reversed.