**Jerry M. GIMMY, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Tere Lee JOHNSON, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**James C. GERMANY, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**Benny Lee HODGE, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

Nos. 80SC298, 80SC252, 80SC355 and 81SC125.

Supreme Court of Colorado, En Banc.

March 29, 1982.

Rehearing Denied May 10, 1982.

---

J. Gregory Walta, Colorado State Public Defender, Robert Breindel, Deputy State Public Defender, Denver, for petitioners Gimmy and Johnson.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Asst. Atty. Gen., Denver, for respondent State in all cases.

Marks & Olom, Jonathan L. Olom, Denver, for petitioner Germany.

Morgan Rumler, Asst. Atty. Gen., Denver, for respondent State in Nos. 80SC355 and 81SC125.

Norman R. Mueller, Special Deputy Public Defender, Denver, for petitioner Hodge.

DUBOFSKY, Justice.

We granted certiorari in *People v. Gimmy*, Colo.App., 620 P.2d 42 (1980); *People v. Johnson*, Colo.App., Nos. 78 CA 159 and 78 CA 160 (1980); *People v. Germany*, Colo. App., No. 80CA0092 (1981); and *Hodge v. People*, Colo.App., No. 79CA0534 (1981) and consolidated the cases to consider whether, when a defendant enters pleas of guilty to two or more felonies on the same day, each of the felonies constitutes a separate conviction under the Habitual Criminal Act, sections 16–13–101 *et seq.*, C.R.S.1973 (1978 Repl. Vol. 8; current version in 1981 Supp.); and the related question, whether, if the second felony is committed prior to conviction for the first felony, the convictions for both offenses may be counted for habitual criminal purposes. The Court of Appeals concluded that the legislative purpose of section 16–13–101 was to punish more severely those who show a propensity toward repeated criminal conduct without regard to an opportunity between convictions for the defendant to reform. Because the clear language of the statute supports the Court of Appeals' resolution of these cases, we affirm.

Two of the cases raise additional evidentiary issues. In *Johnson v. People*, the defendant questions the admissibility of a confession allegedly obtained by promises and inducements, and in *Hodge v. People*, the defendant questions the admissibility of both in-court and out-of-court identifications of him by two witnesses. On these issues, also, we find no error, and affirm the decisions in the Court of Appeals.

In November, 1978, in the El Paso County District Court, a jury found Jerry Michael Gimmy guilty of aggravated robbery. The jury additionally found that he previously had been convicted of three felonies and, therefore, was subject to sentencing as an habitual criminal. The three prior felonies consisted of forgery, committed on February 9, 1971, with conviction on April 2, 1971, and sentence and entry of judgment on May 20, 1971; aggravated robbery and robbery, committed on April 24, 1973, conviction on September 25, 1973, and sentence and entry of judgment on December 14, 1973; and welfare fraud, committed between October, 1972 and March, 1973, conviction on September 25, 1973, and sentence and entry of judgment on December 14, 1973. The district court sentenced him as an habitual criminal to life imprisonment.

In November, 1977, in the Larimer County District Court, a jury found Tere Lee Johnson guilty of first-degree burglary,

second-degree assault, second-degree burglary and theft in one criminal action, and of second-degree burglary in another. In both actions the jury found that he previously had been convicted of four felonies and was subject to sentencing as an habitual criminal. The four prior felonies were theft, committed on December 28, 1975; second-degree burglary committed on January 5, 1976; second-degree burglary committed on January 28, 1976; and joy-riding committed on January 28, 1976. Johnson pled guilty to the four felony charges on July 12, 1976. He was sentenced and judgment was entered against him for all four on August 17, 1976. The district court sentenced him as an habitual criminal to two concurrent life sentences.

In December, 1979, in Denver District Court, a jury found James C. Germany guilty of second-degree burglary. After the jury returned the burglary verdict, Germany admitted that he had been convicted of six prior felonies and pled guilty to six habitual criminal counts. The prosecutor determined a life sentence would be excessive in this case, and dismissed four of the habitual counts. The defendant's prior convictions for third-degree burglary, committed on April 1, 1974, and second-degree forgery, committed on July 18, 1974 remained as habitual criminal counts. The defendant pled guilty and had judgment entered against him for the burglary charge on July 22, 1974, and for the forgery charge on January 10, 1975. The district court sentenced him as an habitual criminal to a term of not less than twenty-five years nor more than twenty-five years and one day.

In April, 1979, in Denver District Court, a jury found Benny Lee Hodge guilty of aggravated robbery; the jury also found that he had been convicted previously of three felonies and was subject to sentencing as an habitual criminal. The prior felonies were possession of narcotic drugs, committed on November 16, 1972, for which the defendant entered a plea of guilty and had judgment entered against him on June 21, 1973; second-degree burglary, committed on November 23, 1972, guilty plea and judgment entered on July 11, 1973; and second-degree burglary, committed on November 25, 1975, guilty plea and judgment entered on March 10, 1976. The district court sentenced him as an habitual criminal to life imprisonment.

## I.

At the time these cases arose, section 16–13–101, C.R.S.1973 provided in pertinent part:

(1) Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony shall be adjudged an habitual criminal and shall be punished by confinement in the state penitentiary for a term of not less than twenty-five years nor more than fifty years.

(2) Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, either in this state or elsewhere, of a felony or, under the laws of any other state, the United States, or any territory subject to the jurisdiction of the United States, of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state penitentiary for the term of his or her natural life....[1]

1. We note that section 16–13–101 has been amended since the cases before us arose. It now reads as follows:

"(1) Every person convicted in this state of any felony ... who ... has been twice previously convicted upon charges separately brought and tried, *and arising out of separate and distinct criminal episodes,* either in this state or elsewhere, of a felony ... shall be adjudged an habitual criminal...."

All four defendants argue that section 16–13–101 should be read to require that each of the crimes on which the habitual criminal charges are based be committed sequentially; in other words, that the second of the predicate crimes be committed after *commission and conviction* of the first crime, the third be committed after *commission and conviction* of the second, and so on. Defendants Germany and Hodge contend that their habitual criminal convictions violate the requirement that each predicate offense be committed in sequence because each committed his second offense before being convicted of the first. Defendants Gimmy and Johnson allege error because each was convicted and had judgment entered against him for more than one crime on the same day. The latter two also contend that their entry of guilty pleas to multiple offenses during the same proceeding does not satisfy the requirement of section 16–13–101 that the predicate convictions be on "charges separately brought and tried."

In support of their contention that the predicate felonies must be committed in sequence, the defendants rely on our decision in *People v. Nees*, Colo., 615 P.2d 690 (1980), in which we read the "previously convicted" language of the habitual criminal statute to impose a requirement that the convictions of the predicate offenses occur prior to the commission of the offense subject to the habitual criminal penalty enhancement. We concluded in *Nees* that it was "improper for the trial court to have allowed convictions which were sustained after the commission of the subject crime to be the basis for habitual criminal counts." 615 P.2d at 693.

Our interpretation of section 16–13–101 in *Nees* was based in part on the general principle that an ambiguous statute must be narrowly construed in favor of the accused. *Smalley v. People*, 134 Colo. 360, 304 P.2d 902 (1956). We also noted that the

legislative policy of the statute is to punish repeat offenders, *People v. District Court*, 192 Colo. 375, 559 P.2d 235 (1977), and that policy would not be furthered by a construction of the statute which allowed enhanced punishment for convictions not in existence at the time the subject offense was committed.

■ The principles upon which we based our conclusion in *Nees* do not compel the same result in the cases presently before us. The defendants here do not allege statutory ambiguity—nor is any present, given our clarifying construction in *Nees* that "previously convicted" means that the convictions upon which the habitual criminal counts are based must be "previous" to the commission of the present offense. Moreover, the statute contains no language which implies that each predicate crime be committed *in seriatim*. A rule of statutory construction for ambiguous language is inappropriate where, as here, there is no ambiguous language to construe. Thus, the rule of *Smalley v. People, supra*, that criminal statutes be construed narrowly in favor of the accused, is inapplicable. *See Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("[T]he 'touchstone' of the rule of lenity 'is statutory ambiguity.' . . . Lenity . . . serves only as an aid for resolving an ambiguity; it is not to be used to beget one.").

The defendants point to decisions construing penalty enhancement statutes in some jurisdictions requiring that each successive felony be committed after conviction of the previous felony. *E.g., State v. Wilson*, 230 Kan. 287, 634 P.2d 1078 (1981); *State v. Tavares*, Haw., 630 P.2d 633 (1981); *State v. Hollins*, 310 N.W.2d 216 (Iowa 1981); *State v. Carlson*, 560 P.2d 26 (Alaska 1977); *Boyd v. Commonwealth*, 521 S.W.2d 84 (Ky.App.1975); *Cooper v. State*, 259 Ind. 107, 284 N.E.2d 799 (1972); *Mullins v. State*, 409 S.W.2d 869 (Tex.Cr.App.1966); *Dye v.*

(2) Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, *and arising out of separate and distinct criminal episodes*, either in this state or

elsewhere, of a felony . . . shall be adjudged an habitual criminal . . . . "
(Emphasis added.) Colo.Sess.Laws 1981, ch. 200, 16–13–101 at 948.

*Skeen,* 135 W.Va. 90, 62 S.E.2d 681 (1950); *Joyner v. State,* 158 Fla. 806, 30 So.2d 304 (1947); *State v. Jones,* 138 Wash. 110, 244 P. 395 (1926). Other courts, however, have reached the opposite result and concluded that predicate felonies need not occur in any particular sequence. *Washington v. State,* Ark., 621 S.W.2d 216 (1981); *Carr v. State,* Nev., 620 P.2d 869 (1980); *State v. Pierce,* 204 Neb. 433, 283 N.W.2d 6 (1979); *Pearson v. State,* 521 S.W.2d 225 (Tenn. 1975); *People v. Taylor,* 16 App.Div.2d 944, 229 N.Y.S.2d 862 (1962), *aff'd* 13 N.Y.2d 675, 241 N.Y.S.2d 166, 191 N.E.2d 670 (1963); *Castle v. Gladden,* 201 Or. 353, 270 P.2d 675 (1954); *Waxler v. State,* 67 Wyo. 396, 224 P.2d 514 (1950); *State v. Williams,* 226 La. 862, 77 So.2d 515 (1955); *Bumbaugh v. State,* 36 Ohio App. 375, 173 N.E. 267 (1930). Given our statutory language, we follow the latter set of cases.

As a policy basis for their argument, the defendants point to the enhanced opportunity to reform afforded by a requirement that the predicate offenses be committed sequentially. This argument was summarized by the Alaska Supreme Court in *State v. Carlson,* 560 P.2d 26 (Alaska 1977):

> [W]hen a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is then reasonable to subject him to harsher sanctions. However, where . . . two convictions occur on the same day, the opportunity for reformation is afforded to him only once, not twice.

*Id.* at 30.

Without making a judgment about the rationale of affording an offender the opportunity to reform, we can only conclude that such a rationale was not explicitly endorsed in our habitual criminal statute. Although we said in *Nees* that "[a]n enhanced penalty should not be imposed until the offender has the opportunity to reform because of the salutary discipline from the punishment for the first conviction," 615 P.2d at 693, we did not mean by so stating to read into the statute a requirement of a series of warnings and opportunities to reform. We note that an equally important rationale for the habitual criminal statute is that enhanced punishment is appropriate when an individual has shown "a propensity toward repeated criminal acts." *People v. Lake,* 195 Colo. 454, 580 P.2d 788 (1978). Absent a clear statement that the General Assembly intended a requirement of crimes committed in sequence, we will not impose one. *See Castle v. Gladden, supra.*

■ Defendants Gimmy and Johnson also contend that their entry of guilty pleas to multiple offenses during the same proceeding does not satisfy the requirement that a defendant's prior convictions be on "charges separately brought and tried." We disagree. Both defendants' predicate convictions arose from charges which, had they not been adjudicated through the entry of guilty pleas, would have been tried separately. *See* Crim.P. 13; *Brown v. District Court,* 197 Colo. 219, 591 P.2d 99 (1979). The charges were separately "brought"— i.e., in separate informations, with separate docket numbers, arising out of separate criminal incidents. A predicate conviction under section 16–13–101 may result either from a conviction following trial, or upon entry of a guilty plea. *People v. Goodwin,* 197 Colo. 47, 593 P.2d 326 (1979). Where the charges against the defendants were separately brought and would have been tried separately but for the defendants' decisions to enter guilty pleas, the convictions thereby obtained satisfy the definition of predicate felonies in the habitual criminal statute.

Subjecting the defendants in the instant cases to habitual criminal penalties is not inconsistent with the goal of punishing repeat offenders. Each had been convicted of multiple separate offenses prior to commission of the subject offense for which penalty enhancement is sought. *See People v. Nees, supra.* We conclude that the Court of Appeals correctly rejected the defendants' arguments that they were improperly convicted under section 16–13–101 because the commission of each successive felony did

not postdate the conviction for the last prior predicate felony.

## II.

One of the defendants, Tere Johnson, challenges his conviction for the subject offense on an evidentiary ground. He contends that his confession, and any evidence obtained from it, should be suppressed because a Fort Collins police officer induced the confession by promising him that his only punishment would be revocation of his then-current sentence to community corrections. The Larimer County District Court denied the defendant's suppression motion, finding that the statements made by the defendant were intelligently and voluntarily made and that they were not induced by promises. The Court of Appeals observed that whether the defendant's statements were induced by promises turned on resolution of conflicting evidence and that the trial court considered the credibility of the witnesses in finding the statements voluntary. The Court of Appeals upheld the district court ruling as supported by adequate evidence in the record. We agree.

The defendant was serving a sentence to community corrections when the officer called his community corrections supervisor and asked her if she would arrange for the defendant to talk with him about two unsolved burglaries in the Campus West area where entrance to commercial buildings was made through a bathroom window, the same method of entry the defendant had used to commit several prior burglaries. When the supervisor informed the defendant that the officer wished to talk with him, she did not tell him that the officer contemplated recommending revocation of his community corrections sentence if the officer found he had been involved in the burglaries. She did tell the defendant, however, that his sentence to community corrections was conditioned on his refraining from engaging in illegal activity during its pendency. The defendant agreed to speak with the officer.

When the officer asked whether the defendant knew anything about the Campus West burglaries, the defendant initially denied any knowledge. A few minutes later he said that he had told a couple of people about his method of breaking into buildings, and then he said that he was with those people when they committed the burglaries in Campus West, but that he stayed in the car. The police officer immediately gave the defendant a *Miranda*[2] warning and placed him under arrest. After the *Miranda* advisement, the defendant confessed to two additional burglaries in Fort Collins and one in Loveland. Both of the Fort Collins burglaries were of residences during the night while the occupants were asleep, and in one of them, the defendant assaulted a young woman who was sleeping. Prior to the confession, the police had not linked the defendant to these burglaries.

At the suppression hearing, the officer testified that when the defendant admitted his involvement in the Campus West burglaries, he asked the officer what the consequences of his admission would be. The officer replied that he could not say because the district attorney would make that decision; however, he would recommend revocation of the community corrections sentence. Both the defendant and the officer testified that this exchange occurred *before* the defendant admitted his involvement in other burglaries. The defendant also testified that he understood the recommendation of revocation to relate only to the Campus West burglaries. However, the defendant argued at the suppression hearing that the officer's statement of his intention to recommend revocation implied to the defendant that he would be treated leniently and induced his confession to the other burglaries.

For a confession to be admissible, it must be voluntary. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A confession may not be obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Brady v. United States*, 397 U.S.

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *People v. Scott*, 198 Colo. 371, 600 P.2d 68 (1979); *People v. Parada*, 188 Colo. 230, 533 P.2d 1121 (1975). The totality of the circumstances is to be considered by the trial court in determining whether a confession is voluntary, *People v. Scott, supra; People v. Corbett*, 190 Colo. 388, 547 P.2d 1264 (1976), and the burden is on the prosecution to show voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

■ After hearing the evidence at the suppression hearing, the trial judge concluded, based on the totality of the circumstances, that the defendant's confession was voluntary. On review, we are bound by the trial court's factual findings where they are supported by adequate evidence in the record. *People v. Scott, supra; People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978); *People v. Pineda*, 182 Colo. 385, 513 P.2d 452 (1973); *People v. Medina*, 180 Colo. 56, 501 P.2d 1332 (1972). Here, the trial court's finding that the defendant's confessions were not induced by a promise is supported by the record and forecloses reversal by this Court.

## III.

The other evidentiary challenge to a conviction for the subject offense is by Benny Hodge who contends that his out-of-court and in-court identification by one witness and his in-court identification by another witness should be suppressed. The Denver District Court found no impermissible suggestiveness in the identification procedures and admitted the identifications by both witnesses. The Court of Appeals held that the trial court resolution of the issue was supported by the record and would not be disturbed on review. We agree.

About 1:00 a.m. on August 26, 1978, the manager of Zach's Restaurant and one of the waitresses were counting the waitress' receipts when a man, later identified as the defendant, came upstairs ostensibly to request an employment application. When the manager told him to see the bartender downstairs about an application, the man pulled out a pistol, told the two women to be quiet, and took money from a table and the waitress' apron. Both the manager and the waitress testified that the man was less than a foot from them, that the light was good, and that they had several minutes to observe him before he directed them into a neighboring office where one of the bartenders was counting her evening's receipts. The robber instructed the three women to face the wall while he collected the money. He then told the manager to open the safe, and she had an additional opportunity to observe him while she did so. When she told him that the inner safe would not open, he fired the pistol twice and left.

At the police department the next day, the manager and the waitress each separately viewed three or four books of mug-shots containing about 500 pictures. The waitress could not identify anyone from the photographs, but the manager selected five pictures, including one she thought looked most like the robber, which was a picture of the defendant. A little over a month later, she viewed a line-up and selected the defendant as the person who had robbed her. Subsequently, she identified the defendant at the preliminary hearing, at the suppression motion hearing, and at trial.

The defendant argues that the out-of-court identifications were impermissibly suggestive because none of the persons whose photographs initially were selected by the manager, other than the defendant, were included in the line-up. The manager testified the police told her that the robber might not be in the line-up. She also testified that she recognized the defendant in the line-up because of his eyes and facial features, she had observed him carefully at the time of the robbery, and she was not recognizing him in the line-up because she had seen his picture before. She stated that she had a visceral reaction to the defendant in the line-up because he had terrified her and she was sure of her identification.[3]

3. The manager first circled the line-up card number of another person whom she saw be-

The waitress, who had not recognized the defendant's picture in the books of photographs, first identified him at the suppression hearing eight months after the robbery. She testified that she saw his profile in the courtroom as she had seen it at the time of the robbery and recognized him because of a mole or birthmark on the side of his face. The defendant argues that the witness' description to the police did not refer to a birthmark or mole on the side of the robber's face. However, the defendant did not object to the waitress' identification at the suppression hearing or at trial.[4] For the first time, on appeal, the defendant claims that the identification should be suppressed because the setting of the in-court identification with the defendant at counsel table was inherently suggestive.

■ Pre-trial identification procedures which, given the totality of circumstances, are so unnecessarily suggestive as to render an identification unreliable violate due process. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Mack*, Colo., 638 P.2d 257 (1981). Similarly, a defendant is denied due process if an in-court identification is based on an unnecessarily suggestive out-of-court identification. *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). *See also Manson v. Brathwaite, supra; Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). An out-of-court identification made as the result of an unnecessarily suggestive identification procedure is inadmissible as violative of due process unless the identification can be shown under the totality of the circumstances to be reliable, despite the suggestiveness of the procedure used. *Manson v. Brathwaite, supra; People v. Mattas*, Colo., 645 P.2d 254 (1982); *People v. Mack, supra*. A subse-

quent in-court identification by a witness is permissible only if the prosecution can show by clear and convincing evidence that the in-court identification is not the product of the unconstitutional procedure but, rather, is based upon an independent source such as the witness' observations of the accused during the commission of the offense. *E.g., Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *People v. Thatcher*, Colo., 638 P.2d 760 (1981); *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978).

■ The identifications by the manager were supported by several important indicia of reliability. *See Manson v. Brathwaite, supra; Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *People v. Mack, supra; People v. Huguley, supra.* The manager had ample opportunity to view the robber; she gave a detailed description of him; she identified him from hundreds of pictures in the police photo books; she readily identified him at a lineup and at two court proceedings before trial.

■ The admissibility of the in-court identification by the waitress is not plain error, entitling the defendant to raise it for the first time on review. However, we note that this identification was also supported by several important indicia of reliability. The waitress had ample opportunity to view the robber; she gave a detailed description of him; and she identified him at the suppression hearing without hestitation. The fact that she failed to include a facial birthmark or mole in her description of the robber to the police goes to the weight to be given by the trier of fact to her in-court

fore the defendant appeared. She testified at the suppression hearing that she hastily circled that number because the police officer had told her that haircuts, beards and mustaches might differ from the way she recollected the robber's appearance, and she thought the person whose number she circled had a new beard. She realized her mistake as soon as she saw the defendant but was not certain whether she could erase her first circle. After the line-up, she explained her mistake to the police officer and said she was certain about her identification of the defendant.

4. The trial court made no findings supporting the admission of the waitress' in-court identification of the defendant because the defendant did not challenge her identification at either the suppression hearing or trial.

identification of the defendant. *People v. Horne*, Colo., 619 P.2d 53 (1980). In addition, while the waitress' inability to identify the defendant from the books of photographs is relevant, *see United States v. Wade, supra*, it does not preclude her from making an identification upon seeing the defendant in court. *People v. Horne, supra*.

We conclude that the district court properly admitted the out-of-court and in-court identification of the defendant.

Judgments affirmed.