2015 CO 28

**The PEOPLE of the State of Colorado, Petitioner**

v.

**Joseph Phillip DIAZ, Respondent.**

**Supreme Court Case No. 12SC939**

Supreme Court of Colorado.

April 27, 2015

Cynthia H. Coffman, Attorney General, Christine C. Brady, Senior Assistant Attorney General, Denver, Colorado, for Petitioner.

Kathy Goudy, Alternate Defense Counsel, Carbondale, Colorado, for Respondent.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 While serving a sentence in an unrelated case (the original sentence), the defen-

dant, Joseph Phillip Diaz, punched a prison guard (the first assault). Less than three months later, while still serving his original sentence, Diaz threw a cup that hit another guard in the mouth (the second assault). The district attorney charged him in two cases with second degree assault of a detention center employee. Diaz finished serving his original sentence before trial in either case. Trial for the second assault preceded trial for the first. A jury found Diaz guilty, and the court sentenced him to ten years in prison for the second assault. Shortly thereafter, another jury found Diaz guilty of the first assault, and the court sentenced him to ten years consecutive to the ten years already imposed for the second assault.

¶ 2 A majority of a division of the court of appeals held that the trial court erred by ruling that section 18–3–203(1)(f), C.R.S. (2014), required that the sentence for the first assault be served consecutively to the sentence for the second assault.[1] *People v. Diaz*, 2012 COA 158M, ¶ 19, —— P.3d ——. We granted certiorari to consider whether the court of appeals erred by concluding that under section 18–3–203(1)(f) mandatory consecutive sentencing applies only to the sentence the defendant was serving at the time of the assault.

¶ 3 We hold that section 18–3–203(1)(f) requires a consecutive sentence if, at the time of sentencing, the defendant is serving any other sentence. Therefore, we reverse the court of appeals and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 4 On August 11, 2009, Diaz was serving a sentence at the Colorado State Penitentiary ("CSP") for felony menacing (the original sentence). While CSP conducted a mandatory strip search of the defendant during the process of transferring him to a different cell after an incident, the defendant punched one of the guards in his eye with a closed fist. According to that guard, the defendant had blood on his hand at the time the defendant struck him. Consequently, medical personnel also took blood from the guard to verify there was no blood-borne pathogen exposure. This incident became case number 09CR332 (the first assault). On September 29, 2009, the district attorney charged Diaz with second degree assault of a detention center employee under section 18–3–203(1)(f) for the first assault.

¶ 5 On October 22, 2009, while still in custody at CSP for his original sentence and now with a new charge pending for the first assault, Diaz threw water in a guard's face as she attempted to collect his food tray. While she cleared the water from her glasses so she could see, the defendant reached through the tray slot and threw the cup at her head hard enough to require two stitches to her lower lip. This incident gave rise to case number 09CR417 (the second assault). The district attorney subsequently charged the defendant with second degree assault of a detention center employee under section 18–3–203(1)(f) for the second assault.

¶ 6 Before trial in either case, Diaz finished serving his original sentence.

¶ 7 Trial for the second assault preceded trial for the first, possibly because of delays related to evaluating the defendant's sanity and his competency to stand trial. On December 1, 2010, a jury found Diaz guilty, and, on January 24, 2011, the court sentenced him to ten years in prison for the second assault.[2] On January 25, 2011, another jury found Diaz guilty of the first assault. After the guilty verdict, the People dismissed two habitual criminal counts in the case involving the first

---

1. We cite and analyze the current version of section 18–3–203(1)(f). The provision has been amended since the first and second assaults, but the amendments do not relate to the issue before us.

2. Diaz was convicted under section 18–3–203(1)(f). This is a class four felony with a presumptive range of two to six years in the department of corrections. §§ 18–3–203(2)(b) and 18–1.3–401(1)(a)(V)(A), C.R.S. (2014). Be-

cause the defendant was in custody at the time of the offense, his sentence was aggravated under section 18–1.3–401(8)(a)(IV), C.R.S. (2014). The resulting aggravated range was four to twelve years. In its Presentence Investigation Report, the Department of Probation recommended a sentence of between eight and twelve years, primarily based on the defendant's prior convictions for felony menacing and kidnapping. The court imposed ten years.

assault. On February 9, 2011, the court sentenced him to another ten years for the first assault, consecutive to the ten years already imposed for the second assault.[3]

¶ 8 Although the trial court equivocated on this point during the sentencing hearing on February 9, 2011, the court made several remarks at the conclusion of the hearing strongly suggesting that it construed the statute to require a consecutive sentence for the first assault.[4] It is the trial court's decision to impose what it perceived as a *mandatory* consecutive sentence for the first assault that is at issue in this appeal.

## II. Standard of Review

¶ 9 Statutory interpretation is a question of law we review de novo. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo.2010); *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000).

## III. Analysis

¶ 10 Section 18–3–203(1)(f) reads in pertinent part:

A person commits the crime of assault in the second degree if: ... [w]hile lawfully confined or in custody, he or she knowingly and violently applies physical force against the person of a peace officer.... A sentence imposed pursuant to this paragraph (f) shall be served in the department of corrections and *shall run consecutively*

*with any sentences being served by the offender . . . .*

(Emphasis added.)

¶ 11 The question for us is the point in time to which the phrase "any sentences being served by the offender" refers. The prosecution argues that the term "any" plainly refers to any sentences the offender is serving *at the time of the sentencing.* The defendant argues, and the majority below held (*see Diaz*, ¶ 12), that the phrase is ambiguous and applies only to sentences the offender was serving *at the time of the assault.*

¶ 12 When construing a statute our primary purpose is to ascertain and effectuate the intent of the General Assembly. *Romero v. People*, 179 P.3d 984, 986 (Colo. 2007). If the statutory language is clear and unambiguous, no further statutory analysis is required. *Id.* We construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts, and we read the words and phrases in context and construe them according to the rules of grammar and common usage. § 2–4–101, C.R.S. (2014); *Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004). "We do not add words to the statute or subtract words from it." *Turbyne v. People*, 151 P.3d 563, 567 (Colo.2007).

¶ 13 But if the statutory language is susceptible of more than one reasonable interpretation, it is ambiguous and we may

3. To summarize, the key dates are as follows:

- August 11, 2009 (date of offense for first assault)
- October 22, 2009 (date of offense for second assault)
- December 1, 2010 (guilty verdict for second assault)
- January 24, 2011 (sentencing for second assault)
- January 25, 2011 (guilty verdict for first assault)
- February 9, 2011 (sentencing for first assault)

4. At one point during the sentencing hearing, the court said: "It says a sentence (indiscernible) shall be served in the Department and shall run consecutively with any sentences being served by the offender. *I assume that means at the time of the offense.*" (Emphasis added.) The court, de-

fense counsel, and prosecutor all stated that they thought the provision could be so construed. Later in the hearing, the court observed:

[T]he defendant argues for concurrent as opposed to consecutive sentencing. So I guess what I look at in part is why would the legislature put consecutive in 18–3–203(1)(f) and I guess I have to assume that the reason they would want the sentence to be consecutive, the legislature, is for the reasons stated by [the prosecutor], which is that so that it will pack some punch, I guess. Because if while you're in custody you assault somebody and you[r] sentencing is concurrent, in effect, there is no new or additional penalty for that assault.

Just before imposing sentence, the court added: "So, the legislature has indicated they want to treat those offenses differently in terms of both consecutive sentences and the mandatory Department of Corrections sentence."

apply other rules of statutory interpretation. *Vensor v. People,* 151 P.3d 1274, 1277 (Colo. 2007). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

## A. The Plain Language

¶ 14 The majority below found the plain language ambiguous: "[Q]uoting the statute simply begs the question: 'with any sentence being served' when?" *Diaz,* ¶ 17 n.2. We disagree for several reasons.

¶ 15 First, we agree with Judge Russel, who in his dissent opined that "this phrase means just what it says—'with *any* sentences being served.'" *Diaz,* ¶ 23 (Russel, J., dissenting). The construction of the majority below requires us to add words—that is, to read the phrase "at the time of the assault" into the statute. *See People v. Benavidez,* 222 P.3d 391, 394 (Colo.App.2009) (interpreting section 18–3–203(1)(f) and rejecting a similar argument). "But, in interpreting a statute, we must accept the General Assembly's choice of language and not add or imply words that simply are not there." *Id.* at 393–94. Like the court in *Benavidez,* we refuse the defendant's invitation to venture into legislative territory. *Accord Turbyne,* 151 P.3d at 567 ("We do not add words to the statute ...."); *see also id.* at 568 ("[W]e cannot supply the missing language and must respect the legislature's choice of language.").

¶ 16 Second, the phrase in question begins with a reference to imposition of sentence: "A sentence imposed pursuant to this paragraph (f)...." This indicates that the time at issue is the time the sentence is imposed, not the time of assault.

¶ 17 Third, it is illogical to require a consecutive sentence only if the offender is still serving the sentence for which he was imprisoned at the time of the assault because section 18–3–203(1)(f), by its terms, also prohibits assaults that occur before a sentence is even imposed—that is, when an offender is *"lawfully confined or in custody as a result of being charged with ... a crime."* See § 18–3–203(1)(f) (emphasis added); *see also Benavidez,* 222 P.3d at 394 (noting that the provision also encompasses those who have been charged with a crime and requiring a consecutive sentence in that situation).

¶ 18 Last, had the legislature intended that the assault sentence at issue here be consecutive only to the sentence being served at the time of the assault, it could have said just that. It has certainly demonstrated the capacity to impose such a requirement in other provisions of the criminal code. *See Benavidez,* 222 P.3d at 394 (observing that the legislature could have added language under section 18–3–203(1)(f) similar to the language in the escape statute found at section 18–8–209(1), C.R.S. (2014), which states "[a]ny sentence imposed following conviction of an offense under [certain enumerated sections] shall run consecutively ... with any sentence which the offender was *serving at the time of the conduct prohibited by those sections*").

¶ 19 The plain language of the statute makes clear that if, at the time of sentencing, the offender has "any" sentence to serve, the trial court "shall" impose a consecutive sentence.

## B. The Legislative Purpose

¶ 20 Even if we were to find the statutory language ambiguous, our conclusion would be the same because the legislative purpose supports our construction of section 18–3–203(1)(f). The provision resulted from a special session of the 1976 General Assembly, which focused on ways to curb inmate violence; the object sought to be attained is clearly deterrence of assaults on jail and prison staff. The People's suggested construction better facilitates this objective because that interpretation minimizes the potential for a concurrent sentence. Stated differently, it maximizes the potential for additional time based on assaultive conduct against detention personnel while a defendant is in confinement or custody.

¶ 21 Highlighting this legislative purpose, another division of the court of appeals has noted that "[i]nterpreting the statute to limit the requirement of consecutive sentences to

only those offenders who commit assaults while confined after a conviction, as defendant suggests, is inconsistent with the clearly expressed intent of the legislature to deter any assaults against peace officers and other workers within custodial settings by mandating additional punishment." *Benavidez*, 222 P.3d at 394.

¶ 22 The majority distinguished this case from *Benavidez*, reasoning that "[u]nlike the situation in *Benavidez*, ... the sentencing court in this case did not order the assault sentence to be served consecutively to any sentence imposed on a charge for which defendant was confined when he committed the first assault." *Diaz*, ¶ 11. This strikes us as a distinction without a difference. Granted, the procedural history of that case was different—the assault took place while the defendant was in custody *awaiting* the disposition of the other charges, to which the consecutive sentence was later appended. But the court's determination that "the sentencing court was required, pursuant to section 18–3–203(1)(f), to make his sentence for second degree assault consecutive to the sentences he received upon conviction for those other charges," *see Benavidez*, 222

P.3d at 394, did not rest on the timing of his offenses. It rested on the statute's plain language and the legislative purpose behind it. Neither is temporal.[5]

### C. Equal Protection

¶ 23 In addition to finding the statutory language ambiguous, the majority below deemed its interpretation necessary to avoid what it termed "serious equal protection concerns":[6]

[T]here would seem to be no rational basis for requiring consecutive sentencing based on the relative timing of the relevant sentencing proceedings, when one offense has no connection to the other and the timing could be the result of circumstances utterly outside of the defendant's control or of decisions made to protect the defendant's legal rights.

*Diaz*, ¶ 17.

¶ 24 We agree that any equal protection issue here would be resolved under rational basis review. However, we disagree that a rational basis is absent.

¶ 25 "When a statute is subject to an equal protection challenge, the level of

---

5. In support of its statutory interpretation to the contrary, the majority below references the audiotape of the House Judiciary Committee hearing on September 15, 1976. *See Diaz*, ¶ 12 n.1. But beyond noting the statute's obvious purpose—curbing inmate violence—it is inappropriate for us to delve into legislative history. *See Smith*, 230 P.3d at 1190. Even if such an inquiry were appropriate, it would be fruitless here. The legislative history of section 18–3–203(1)(f) is ambiguous and sheds no light upon its meaning. The provision was part of House Bill 76S–1001. Contemporaneous records do not exist for some hearings relevant to the bill, and existing records are contradictory. The audiotape reveals, for instance, that during the hearing on September 15, 1976, Representative Sears proposed an amendment that any sentences run "consecutively," without saying consecutively to what. The chair questioned the need for the amendment but then quickly summarized what had been proposed, stating in relevant part: "[T]he sentence imposed ... shall be served consecutively *with the sentence for which the person was originally confined.*" (Emphasis added.) The amendment passed without objection or discussion, even as to the disparity between the oral records made by the representative proposing the amendment and the chair before the vote. The official staff summary of what occurred states only: "Motion

of Representative Sears that bill be amended on page 3, line 17, by adding the following sentence: 'A sentence imposed pursuant to this section shall be served consecutive *to all other sentences being served by the offender.*'" (Emphasis added.) The majority below observed that "[f]or some reason lost to history, the person who made a written record of action at the hearing recorded that amendment using language different from that actually spoken, language virtually identical to what ended up in the statute." *Diaz*, ¶ 12 n.1. Given the way in which the relevant language was quickly batted around, it may have been "lost to history" because it was lost even in the moment the competing iterations materialized. We cannot be sure. We do know, however, that the language that ultimately became law did not contain the limiting language fleetingly referenced by the chair of this one House subcommittee.

6. The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall .... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The right to equal protection also finds support in the due process clause of our state constitution. *Indus. Claim Appeals Office v. Romero*, 912 P.2d 62, 66 (Colo.1996) (citing Colo. Const. art. II, § 25).

judicial scrutiny varies with the type of classification utilized and the nature of the right affected." *Romero*, 912 P.2d at 66. One of three standards of review may apply: strict scrutiny, intermediate scrutiny, or rational basis review. *Id.* A rational basis standard of review applies where, as here, no traditionally suspect class is present, no fundamental right is at issue, and no other classification warrants review under strict or intermediate scrutiny.[7] *Pace Membership Warehouse v. Axelson*, 938 P.2d 504, 506–07 (Colo.1997). Under this standard, the challenging party must prove beyond a reasonable doubt that the classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is unreasonable, arbitrary, or capricious. *Id.*; *see also Romero*, 912 P.2d at 66. "Simply because a statutory classification creates a harsh result in one instance does not mean that the statute fails to meet constitutionality requirements under the rational basis standard." *Axelson*, 938 P.2d at 507.

¶ 26 Here, as explained above, the legitimate legislative purpose and government objective of section 18–3–203(1)(f) is to deter violence against prison guards. Consecutive sentencing is rationally related to—and promotes—this important objective. That any inmate will serve a full sentence for such an assault, regardless of when he or she is sentenced, has an important deterrent effect; a concurrent sentence, by contrast, would have almost no effect.

## IV. Conclusion

¶ 27 We hold that section 18–3–203(1)(f) requires a consecutive sentence if, at the time of sentencing, the defendant is serving any other sentence. Therefore, we reverse the court of appeals and remand for further proceedings consistent with this opinion.

JUSTICE COATS concurs in the judgment only, and JUSTICE EID joins in the concurrence in the judgment only.

JUSTICE COATS, concurring in the judgment only.

¶ 28 While I too would reverse the judgment of the court of appeals, I do not disagree with that court's construction of section 18–3–203(1)(f), C.R.S. (2014). I would order reinstatement of the defendant's consecutive sentence solely for the reason that I believe, contrary to the understanding of the court of appeals, that the sentencing court never considered itself bound to order a consecutive sentence and instead understood the scope of, and properly exercised, its sentencing discretion. Because I therefore believe the defendant's sentence would not change in any event and because the legislature can amend the statute if it intends a different result, writing separately would hardly be worth the time and effort were it not for what I consider to be the majority's serious mishandling of fundamental principles of statutory construction. As it is, however, I feel obliged to make known my differences with the majority, in the hope that despite controlling the outcome of this case, its opinion will not be regarded as persuasive and its methodology will not be followed in the construction of other statutes. I therefore concur in the judgment, but only the judgment, of the court.

¶ 29 Initially, I would reverse the judgment of the court of appeals for erroneously ascribing to the district court's sentencing decision any application whatsoever of the consecutive sentencing mandate of section 18–3–203(1)(f). As the majority notes, maj. op. ¶ 8 n.4, the sentencing court made clear its assumption that the statute required only that the defendant's sentence for assault run consecutively to a sentence being served "at the time of the offense," and both the prosecutor and defense counsel expressed agree-

---

**7.** Strict scrutiny review applies where the statute in question discriminates against members of traditionally suspect classes, such as those based on race, or involves a fundamental constitutional right, such as the right afforded by the Fifth Amendment to the United States Constitution. *Evans v. Romer*, 854 P.2d 1270, 1275 (Colo. 1993). Courts will uphold laws subject to such review only if a compelling state interest supports them and the statute is narrowly drawn to achieve that interest by the least restrictive means. *Id.* Intermediate scrutiny requires a showing that the statute in question furthers "a sufficiently important governmental interest" in discriminating, for example, on the basis of gender. *Id.* at 1275–76.

ment that the statute could be construed that way. In imposing the sentence, after entertaining argument on the merits of both concurrent and consecutive sentencing for this defendant, the court further indicated its belief that the legislature's consecutive sentencing mandate was intended to ensure that a sentence for committing an assault while in custody would "pack some punch," and the court avoided having to construe the fine points of the statute by simply exercising its discretion to further that intent.

¶ 30 It is well established that in the absence of legislation to the contrary, sentencing courts in this jurisdiction have the inherent power to order, at their discretion, sentences to be served either consecutively to or concurrently with other sentences already being served. *Marquez v. People*, 2013 CO 58, ¶ 6, 311 P.3d 265, 267. Not only did the sentencing court here fail to suggest that it would impose a concurrent sentence were it not statutorily limited from doing so; rather than imposing the four year, mid-point-of-the-presumptive-range sentence that was otherwise available if it considered a mandatory consecutive sentence too harsh, the court instead made findings concerning this particular defendant and this particular offense sufficient to justify the consecutive sentence, in the aggravated range, which it ultimately imposed. As we have previously held, in the absence of any suggestion by the sentencing court that it considered itself bound by statute, and therefore erroneously failed to exercise its discretion as required, construction of the statute in question is not at issue. *See Tumentsereg v. People*, 247 P.3d 1015, 1020–21 (Colo.2011).

¶ 31 With regard to the question of statutory construction, I disagree with the majority's methodology and conclusion on a number of critical points, beginning with its failure to adequately distinguish the interpretation of statutory language relative to the question of ambiguity from the construction of an ambiguous statute. The precise point at which the one leaves off and the other begins in any particular case will, of course, often be subject to debate, but as a matter of general principle, it is clear that a statute takes its

meaning, first and foremost, from the text of the statute itself. When that language is susceptible of more than one reasonable interpretation, however, it is considered to be ambiguous, and the particular reasonable interpretation that embodies the legislative intent, and therefore the ultimate meaning of the statute, is to be determined by reference to a body of both internal and external aids to statutory construction. While the reasonable interpretation of statutory text is clearly dependent upon the definitions of the words of the text themselves, the context in which they are used, and the relationships among them, as governed by accepted rules of grammar and syntax, when those considerations nevertheless produce more than one reasonable understanding of the text, additional presumptions, drafting conventions, and external sources pointing to the intent of the body enacting the statute must resolve the "legislative intent."

¶ 32 It at least appears to be the case that the majority believes the question of ambiguity to turn on more than the text of the statute itself, relying as it does on a number of dubious propositions, or rules of statutory construction, to find that statute unambiguous. As its first of a number of rationales, the majority asserts that the key phrase of the statute "means just what it says-'with *any* sentences being served.'" Maj. op. ¶ 15. But giving emphasis to the word "any," as the dissenting opinion in the intermediate appellate court had done, actually suggests confusion about precisely what is at issue. There is no dispute here about the kinds of sentences to which a section 203(1)(f) sentence must be consecutive. Rather the matter at issue concerns the meaning of the phrase "being served." Because "being" clearly describes something in existence, rather than something that has existed in the past or will exist in the future, the meaning of the text necessarily turns on the point in time to which "being served" refers.

¶ 33 Rather than concluding from the text's failure to specify any particular point in time that it is therefore ambiguous, the majority mechanically relies on another dubious proposition to conclude that construing the term "being served" as a reference to

"the time of the assault" would require impermissibly adding or "imply[ing]" words to the text. Maj. op. ¶ 15. I consider the majority's reasoning faulty for two separate reasons. First, it in no way advances the argument in the majority's favor. If inferring a reference to "the time of the assault" amounts to impermissibly adding words, it is far from clear why inferring a reference to "the time of sentencing" does not amount to adding words in precisely the same manner. Second, and more importantly, this abbreviated proposition itself represents an accurate principle of construction only to the extent that it forbids adding words to avoid an ambiguity, not to resolve one. Furthermore, words that are necessarily implied by the text are not added within the meaning of this principle at all, but are simply made explicit. It is, of course, not only permissible but in fact imperative to interpret the text of a statute in terms of its necessary implications. It is, however, the possibility of competing or contradictory reasonable implications, or interpretations, that creates (or perhaps defines) an ambiguity, and it would therefore be nonsensical to dismiss the acknowledgment of any reasonable implication of the text as requiring the addition of words. When statutory text admits of contradictory reasonable interpretations, clarifying which interpretation embodies the legislative intent is the purpose of the rules of construction—not forbidden by them.

¶ 34 Notwithstanding the statute's failure to modify the phrase "being served" with the words "at the time the sentence is imposed," as well as the majority's overstatement that adding words is impermissible, the majority finds that an earlier reference to the imposition of sentence must indicate that the intended time is the time the sentence is imposed, rather than the time of the assault. While this inference might be considered reasonable, it is certainly neither necessary nor the only reasonable inference to be drawn from the complete text of section 203(1)(f). Because a sentence is "imposed pursuant to this paragraph (f)" for an assault by an adult on a prison employee only if the assault is committed "while lawfully confined or in custody as a result of being charged with or convicted of a crime," it is equally reasonable, if not more so, to infer that the class of sentences to which a sentence imposed pursuant to paragraph (f) must run consecutively was intended to be limited to those sentences for which the defendant's lawful confinement constitutes an element of the offense.

¶ 35 Apparently unconvinced by its earlier explanations why the statute should be considered unambiguous, the majority adds that requiring sentences imposed pursuant to paragraph (f) to run consecutively only to sentences for which the defendant was lawfully confined when he committed one of the specified assaults would be "illogical." However, the fact that paragraph (f) elevates what might otherwise be assaults in the third degree to assaults in the second degree in certain cases not involving the service of another sentence in no way renders it illogical or contradictory to mandate consecutive sentences for those assaults committed while serving another sentence. To the extent the majority suggests a legislative intent that sentences for violation of paragraph (f) not be served concurrently with any other sentence, its own construction would no more accomplish this result than would the construction of the court of appeals. Only by forbidding subsequent sentencing courts from running later-imposed sentences concurrently with a sentence imposed pursuant to paragraph (f) could this broad goal be accomplished, and the legislature has clearly shown no inclination to do so.

¶ 36 As a final reason for finding the statute unambiguous, the majority observes that if the legislature intended the phrase "being served" as a limitation to sentences being served when the assault was actually committed, it could simply have said so. Once again this observation advances the inquiry not one iota. While it may be an accurate observation, it is applicable with equal force to the majority's construction. If the legislature intended the phrase "being served" to refer to sentences being served at the time of sentencing, it could simply have said so. Rather than demonstrating a lack of ambiguity in the text, the legislature's failure to specify with which sentences a paragraph (f) sentence could not be ordered to run concur-

rently is the very omission creating the ambiguity.

¶ 37 I agree with the majority that existing records of legislative hearings are not helpful in resolving the question in this case. Even without the benefit of such external evidence of legislative motivation, however, the majority divines a "legislative purpose" or "clear legislative intent" to deter assaults in custody, and it asserts that its owns construction better "facilitates this objective." Although the majority's construction might result in restricting sentencing court discretion in a larger class of cases, it could hardly enhance the deterrent value of the penalty, even if such broad deterrence actually were the motivating factor behind the statute. Deterrence, in the sense of behavior modification, necessarily requires an awareness of an undesirable consequence in order to avoid it. The majority's construction would mandate consecutive sentences based on the fortuitous, or even manipulated, timing of sentencing hearings rather than enhancing the predictability of the consequences of assaulting a prison employee. In any event, the legislature has separately both elevated and aggravated sentences for assault on law enforcement and prison personnel, and little deterrent effect could be expected from mandating consecutive sentencing, which is already within the discretion of sentencing courts. Perhaps more importantly, however, nothing suggests a legislative purpose to deter any more than to ensure adequate retribution or punishment for such crimes by eliminating the possibility that the offender would serve no greater sentence than that for which he was already confined.

¶ 38 Along these lines, a serious objection to the majority's construction, and one leading me to believe the obvious ambiguity in the text should be resolved in favor of limiting a sentencing court's discretion only for sentences the service of which elevates the assault to the felony 4 level in the first place, is the fact that doing otherwise effectively increases a defendant's confinement on the basis of factors not only beyond his control, but even occurring after the commission of his crime. Unlike the court of appeals, I do not suggest the majority's construction lacks any rational basis; but whether constitutional limitations are implicated or not, we in this jurisdiction have long acknowledged traditional principles of criminal responsibility prohibiting the state from converting a less serious charge into a more serious one on the basis of something occurring after the charge. Largely in reliance on this very principle, we long ago resolved ambiguous language in our habitual criminal statute to disallow enhanced sentences on the basis of convictions incurred after commission of the offense for which the defendant was being sentenced. *See People v. Nees,* 200 Colo. 392, 615 P.2d 690, 693 (1980) (construing "within ten years" to mean only within ten years before, rather than including ten years after, commission of the current offense). Unlike so-called "real offense" sentencing, *see generally Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *People v. Newman,* 91 P.3d 369 (Colo.2004), which permits consideration of even unrelated conduct in imposing a sentence within a statutorily dictated range, the majority's construction extends confinement on the basis of convictions not even yet in existence, and in fact crimes not even yet committed, when the crime for which the defendant is being sentenced was committed.

¶ 39 Finally, I am completely baffled both by the majority's reliance on the prior court of appeals rationale in *People v. Benavidez,* 222 P.3d 391 (Colo.App.2009), and its attempt to minimize the distinction between that rationale and its own reasoning, characterizing it as nothing more than "a distinction without a difference." Maj. op. ¶ 22. Rather than involving a mere difference in procedural history, as the majority asserts, the construction of *Benavidez* stands in diametric opposition to the majority's construction today. More particularly, the *Benavidez* court relied on the definition of the crime itself, which elevates the classification of assaults on prison employees committed by defendants "while lawfully confined or in custody as a result of being charged with or convicted of a crime," to conclude that the legislature's consecutive sentence mandate must have been intended to extend to any sentence, whether yet imposed or not, for a crime with which the defendant had already been charged and

as a result of which charge he was lawfully confined at the time of committing his subsequent assault. 222 P.3d at 394. Ironically, the *Benavidez* rationale grew out of an attempt to avoid the fortuitous impact of scheduling which the majority now celebrates as enhancing deterrence. Whatever its merits, *Benavidez* did not, and could not consistently with its own rationale, accept any construction mandating consecutive sentencing for crimes other than those for which the defendant was already lawfully confined at the time of the prison assault.

¶40 Because the legislature's failure to specify the point in time to which the phrase "being served" was intended to apply creates an ambiguity which I believe, for both policy and textual reasons, should be resolved as was done by the court of appeals below, I agree with the court of appeals' construction of the statute. Because, however, I believe the court of appeals failed to appreciate that the sentencing court properly exercised its discretion to sentence consecutively rather than concurrently, I would nevertheless reverse the court of appeals' judgment. I therefore concur only in the judgment of this court and not its reasoning.

I am authorized to state that JUSTICE EID joins in this concurrence in the judgment only.