The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 7, 2019

## 2019COA32

### No. 17CA0705, *People v. Williams* — Criminal Law — Sentencing — Punishment for Habitual Criminals

A division of the court of appeals considers whether two guilty pleas entered at the same hearing to two charges brought in separate charging documents constitute two convictions for purposes of the habitual criminal sentencing statute, § 18-1.3-801(2)(a)(I), C.R.S. 2018, when the two charges were permissively joined for trial under Crim. P. 8(a)(2). The division concludes that because the charges would have been tried together in one trial but for defendant's guilty pleas, in line with *Gimmy v. People*, 645 P.2d 262, 267 (Colo. 1982), they cannot be considered separately tried under the habitual criminal sentencing statute. Therefore, the division further concludes that the two guilty pleas resulted in one conviction for purposes of the habitual criminal sentencing statute.

In so concluding, the division rejects the contention that the inquiry is resolved by determining whether the joinder was mandatory or permissive under Crim. P. 8. Thus, the trial court erred in finding this distinction dispositive and adjudicating defendant a habitual criminal.

The division also concludes that the trial court did not err in denying defendant's motion to suppress the pretrial identification or in denying his motions for a continuance.

Accordingly, the division affirms the district court's judgment, reverses the sentence, and remands with directions for the trial court to impose a new sentence and to correct the mittimus.

COLORADO COURT OF APPEALS					**2019COA32**

Court of Appeals No. 17CA0705
City and County of Denver District Court No. 15CR5126
Honorable Andrew P. McCallin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Wenston Williams,

Defendant-Appellant.

JUDGMENT AFFIRMED, SENTENCE REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE TERRY
J. Jones and Nieto*, JJ., concur

Announced March 7, 2019

Philip J. Weiser, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Cynthia M. Mardian, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Defendant, Wenston Williams, appeals his judgment of conviction entered after a jury found him guilty of aggravated robbery and second degree assault.  He also appeals the sentence imposed after the trial court adjudicated him a habitual criminal.

¶ 2    In Part IV of this opinion, we consider whether two guilty pleas entered at the same hearing constitute two separate convictions for purposes of the habitual criminal sentencing statute, § 18-1.3-801(2)(a)(I), C.R.S. 2018, when the pleas were to two charges brought in separate charging documents, but later joined for trial under Crim. P. 8(a)(2).  We conclude that when two charges would have been tried together in one trial but for the defendant's guilty pleas, they cannot be considered "separately brought and tried" under the habitual criminal sentencing statute.  *See Gimmy v. People*, 645 P.2d 262, 267 (Colo. 1982).

¶ 3    We affirm the judgment, reverse the sentence, and remand with directions to impose a new sentence and to correct the mittimus.

## I.    Background

¶ 4    Defendant robbed an Uber driver (the victim) at knifepoint in an alleyway in Denver.  After the jury returned its verdict, the trial

court held a hearing to determine whether defendant was a habitual criminal. Based on defendant's prior convictions for first degree assault (heat of passion) and two prior convictions for distribution of a Schedule II controlled substance, the trial court adjudicated him a habitual criminal and sentenced him to sixty-four years in prison.

## II. Defendant's Motion to Suppress Pretrial Identification

¶ 5 Defendant contends that the pretrial photo lineup, from which the victim identified him, was impermissibly suggestive. He argues that he was older than the other men in the photo array, the clothing displayed in his photo was unduly suggestive as compared with the clothing worn by the other pictured men, and there were impermissible differences between the photos because some of the pictured men had tattoos. He also contends that the photo array was impermissibly suggestive because of the limited number of photos included. We disagree with all of these contentions.

### A. Standard of Review and Applicable Law

¶ 6 The constitutionality of pretrial identification procedures presents a mixed question of law and fact. *Bernal v. People*, 44 P.3d 184, 190 (Colo. 2002). Because defendant objected, we review for

2

harmless error and will reverse if there is a reasonable possibility that any erroneous admission of the identification contributed to the conviction. *People v. Singley*, 2015 COA 78M, ¶ 10.

¶ 7 Suggestive lineups are disapproved of because of the increased likelihood of misidentification and, thus, conviction of the innocent. *Bernal*, 44 P.3d at 190. Therefore, "each case must be considered on its own facts," and a conviction based on an eyewitness's identification at trial "following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 191 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). This standard requires a two-part analysis. *Id.*

¶ 8 "First, a court must determine whether the photo array was impermissibly suggestive . . . ." *Id.* The defendant bears the burden of proof. *Id.* "Second, if the defendant's burden is met, the burden shifts to the People to show that despite the improper suggestiveness, the identification was nevertheless reliable under the 'totality of the circumstances.'" *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)).

3

¶ 9 Relevant factors to consider in determining whether the identification procedure is impermissibly suggestive include the size of the array and the manner of its presentation, as well as the details of the photographs themselves. *Id.* An array that includes a photo that is unique in a manner directly related to an important identification factor may be held impermissibly suggestive. *People v. Borghesi*, 66 P.3d 93, 104 (Colo. 2003) ("[T]he remaining consideration is whether the photographs in the array are so limited that the defendant is the only one to match the witness's description of the perpetrator." (citing *Bernal*, 44 P.3d at 191)). The police are not required to "provide a photo array containing only 'exact replicas' of the defendant's picture," but the photos must be "matched by race, approximate age, facial hair, and a number of other characteristics." *Bernal*, 44 P.3d at 191-92 (quoting *People v. Webster*, 987 P.2d 836, 839 (Colo. App. 1998)).

¶ 10 If the court finds a photo array impermissibly suggestive, it must then proceed to the second step of the analysis and determine whether, under the totality of the circumstances, the suggestive procedure created a very substantial likelihood of misidentification. *Id.* at 192.

4

## B.    Discussion

¶ 11     The number of photos in the array — six — and the complained-of details of the photos did not render the lineup impermissibly suggestive.

¶ 12     The victim described the suspect as a black male, thirty to forty years old, five feet eight inches tall, heavily built, and wearing a black hoodie.

¶ 13     At a preliminary hearing, the detective who conducted the photo lineup testified that before he showed the photos to the victim, he gave the victim several standard admonitions about the photo lineup process.  The detective showed the victim the six photographs individually.  Though the detective did not remember whether the victim viewed any of the photographs twice, he testified that the victim was "pretty quick about" viewing them.  The detective was not involved with the case in any other way and did not know the identity of the suspect.  Another detective testified that he compiled the photo lineup using photographs from Web Mug based on the characteristics described by the victim.

¶ 14     Nothing about the presentation of the photographs renders the procedures surrounding the array suggestive, and the number of

photographs shown was not so small as to make the presentation unfairly suggestive. *See People v. Wilford*, 111 P.3d 512, 514 (Colo. App. 2004). The question, then, is whether defendant's photograph substantially matches the description given by the victim, and whether it "so stood out from all of the other photographs as to 'suggest to [the victim] that [defendant] was more likely to be the culprit.'" *Bernal*, 44 P.3d at 191 (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)) (alteration in original).

¶ 15 The trial court found that, although the filler photos were of men younger than defendant, defendant "in fact, looks close in age to the individuals who are aligned in the photo array, even though they were all in their 30s." Based on that finding, the court concluded that defendant's "age did not stand out as an identifying characteristic among all of the other individuals who are aligned in the photo array."

¶ 16 The court also rejected defendant's argument that his photo improperly stood out because he was wearing a hoodie. The court noted that the hoodie in defendant's photo was red, whereas the victim described the suspect as wearing a black hoodie, and that another man in the photo array was wearing a black hoodie. Under

6

all of the circumstances, including other distinguishing characteristics, such as "the shaved head, the approximate age, and the description provided by [the victim]," the court found that the photo of defendant wearing a hoodie did not cause the array to be unduly suggestive.

¶ 17     The record supports the court's findings.  The photo of defendant matched the victim's description of the suspect "by race, approximate age, facial hair, and a number of other characteristics," and the filler photos depicted men who generally fit the witness's description, as required by *Bernal*.  *See Singley*, ¶ 22.

¶ 18     We are not persuaded that the photo array was impermissibly suggestive because one man was wearing a hospital gown.  Nor does the fact that one of the men had a neck tattoo and one had a chest tattoo render the photo array impermissibly suggestive.  The neck tattoo on one of the men in the lineup appears only faintly, and given the witness's description that the perpetrator was wearing a hoodie, there is no reason to believe that a neck or chest tattoo would have been visible during the robbery.  *See People v. Plancarte*, 232 P.3d 186, 191 (Colo. App. 2009) (photo lineup was not impermissibly suggestive where several of the men were too

7

light-skinned to fit the witnesses' descriptions and some of them had thin or short facial hair, which did not match the description of the burglar as clean shaven); *Wilford*, 111 P.3d at 514 (photo array was not impermissibly suggestive where the defendant was wearing a red shirt and was one of two men out of six photos with braids, and the robber was described as having braided hair).

¶ 19    We further conclude that the photo array was not so suggestive "as to give rise to a substantial likelihood of irreparable misidentification." *See Wilford*, 111 P.3d at 514.  Because we conclude that the array was not impermissibly suggestive, we do not need to reach the second prong of the *Bernal* test.  *Borghesi*, 66 P.3d at 106.

### III.    Defendant's Motions for a Continuance

#### A.    Motion for Continuance to Retain Counsel of Choice

¶ 20    Defendant contends that the trial court abused its discretion and violated his Sixth Amendment right to his counsel of choice by denying his motion for a continuance.  We disagree.

##### 1.    Standard of Review and Applicable Law

¶ 21    We will disturb a trial court's ruling on a motion for a continuance only if the trial court abused its discretion.  *People v.*

*Brown*, 2014 CO 25, ¶ 19. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Rains v. Barber*, 2018 COA 61, ¶ 8.

¶ 22    The Sixth Amendment provides a criminal defendant the right to be represented by counsel of his or her choice. *People v. Maestas*, 199 P.3d 713, 716 (Colo. 2009). "[A] defendant's right to select an attorney whom he or she trusts is considered to be central to the adversary system and 'of substantial importance to the integrity of the judicial process.'" *Brown*, ¶ 16 (quoting *Rodriguez v. Dist. Court*, 719 P.2d 699, 705-06 (Colo. 1986)). As a result, "an accused who desires and is financially able should be afforded a fair opportunity to secure counsel of his own choice." *Anaya v. People*, 764 P.2d 779, 781 (Colo. 1988) (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).

¶ 23    Although courts afford this right great deference, the Sixth Amendment does not provide an absolute right to counsel of choice in all cases. *Brown*, ¶¶ 16-17. Considerations such as judicial efficiency and maintaining the integrity of the judicial process may sometimes outweigh a defendant's right to counsel of choice. *Id.* at

¶ 17.  "For example, a defendant may not use the right to counsel of choice to delay the trial or impede judicial efficiency."  *Id.*

¶ 24    When a defendant moves to continue the trial to replace counsel, the court must balance the defendant's right to counsel against the demands of fairness and efficiency.  *Id.* at ¶ 20. Balancing these competing interests requires the court to consider the following eleven factors:

- the defendant's actions surrounding the request and apparent motive for making the request;

- chosen counsel's availability;

- the length of continuance necessary to accommodate chosen counsel;

- the potential prejudice — beyond mere inconvenience — to the prosecution caused by a delay;

- the inconvenience to witnesses;

- the case's age, both in the judicial system and from the date of the offense;

- the number of continuances already granted in the case;

- the timing of the request to continue;

- the impact of a continuance on the court's docket;

- the victim's position, if the victim's rights act applies; and

- any other case-specific factors necessitating or weighing against further delay.

*Id.* at ¶ 24.

¶ 25 This is not a mechanical test. *Id.* at ¶ 20. "[N]o single factor is dispositive and the weight accorded to each factor will vary depending on the specific facts at issue in the case." *Id.* at ¶ 24.

## 2. Discussion

¶ 26 In concluding that the interests of justice required denial of defendant's motion for a continuance, the trial court found that defendant could have raised the issue earlier, but instead waited until the first day of trial. The court was suspicious of these circumstances. Though the trial had already been twice delayed, defendant had not yet retained counsel of his choice, and consequently replacement counsel was not available to represent him on the first day of trial. The court reasoned that any continuance to accommodate chosen counsel's entry into the case would be lengthy, and would prejudice the People to "a great extent" because of circumstances surrounding the codefendant, who was

11

set to testify for the prosecution. The court also found that the alleged victim would be adversely impacted by such a delay because, as a result of the trial, he had deferred an overseas trip to visit his terminally ill father. And the court considered the possibility that the victim might leave the country as a case-specific factor that weighed against any further delay in the nearly two-year-old case.

¶ 27    Because the trial court's findings are supported by the record, and the court considered the appropriate factors in balancing defendant's right to have counsel of his choosing against the efficient and effective administration of justice, we conclude that the court did not abuse its discretion in denying defendant's motion for a continuance. *Brown*, ¶¶ 17, 26 ("Given the highly factual nature of the balancing test, the trial court is undeniably in the best position to determine whether a continuance is appropriate.").

    B.    Motion for a Continuance to Complete Fingerprint Testing

¶ 28    Defendant next contends that the trial court abused its discretion and violated his constitutional rights by denying his motion for a continuance to allow the People to complete fingerprint testing. He further contends that the completed testing would have

12

allowed for the production of exculpatory evidence.  We reject these contentions.

¶ 29    We review a trial court's ruling on discovery matters for an abuse of discretion.  *People v. Dill*, 904 P.2d 1367, 1374 (Colo. App. 1995), *aff'd*, 927 P.2d 1315 (Colo. 1996).

¶ 30    The prosecution sought to compare defendant's fingerprints to prints found in the victim's car, but the only print from the car that was potentially of sufficient quality to allow for a comparison was of a portion of the finger not typically captured on exemplars.  Thus, the comparison results were inconclusive.

¶ 31    At a pretrial hearing, defendant argued that Crim. P. 16 required the prosecution to provide a new fingerprint comparison before trial.  But the prosecution did not have possession or control of any exculpatory fingerprint comparison results.  *See* Crim. P. 16(I)(a)(2) (requiring prosecutors to disclose "any material or information within [their] possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor").

¶ 32    To make a comparison as requested by defendant, he would have had to provide a new set of his fingerprints.  Defendant's

request amounted to a request that the prosecution retake his fingerprints and submit the new exemplars for comparison to those found in the car. However, "the state has no duty to have evidence tested on the speculative basis that it might have some unspecified use for exculpatory purposes." *People v. Apodaca*, 998 P.2d 25, 30 (Colo. App. 1999) (citing *People v. Roark*, 643 P.2d 756 (Colo. 1982)). "Failure to investigate does not constitute suppression of evidence, nor may the defendant compel the state to search out and gather evidence which could be exculpatory." *Id.*; *see also People v. Norwood*, 37 Colo. App. 157, 162, 547 P.2d 273, 278 (1975) (the state's failure to take fingerprints and preserve evidence did not result in a violation of due process where the state did not benefit and investigatory gaps in the prosecution's case were brought out at trial).

¶ 33     Considering the totality of the circumstances, we discern no error in the court's ruling on defendant's motion for a continuance. *See Dill*, 904 P.2d at 1374.

### IV.   Habitual Criminal Sentencing Statute

¶ 34     Defendant contends that the trial court erroneously sentenced him under the habitual criminal sentencing statute because two of

his three prior felony convictions were permissively joined for trial. We agree and therefore remand this case to the trial court for resentencing without the habitual criminal sentence enhancer.

### A. Standard of Review and Statutory Construction Principles

¶ 35    Our review of statutory provisions is de novo. *Cowen v. People*, 2018 CO 96, ¶ 11.

¶ 36    When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Id.* We start by examining the plain meaning of the statutory language. *Id.* If a term is not defined in a statute, we construe the term in accordance with its ordinary or natural meaning. *Id.* at ¶ 14. We give consistent effect to all parts of the statute and construe each provision in harmony with the overall statutory design. *Id.* at ¶ 13.

### B. "Charges Separately Brought and Tried" Element

¶ 37    For a defendant to be adjudged a habitual criminal under section 18-1.3-801(2)(a)(I), the prosecution must prove beyond a reasonable doubt that the defendant, having been convicted of a felony, "has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and

distinct criminal episodes." *People v. Nunn*, 148 P.3d 222, 225 (Colo. App. 2006).

¶ 38     Charges are separately brought where they are "in separate informations, with separate docket numbers, arising out of separate criminal incidents," and a predicate conviction can result from either a conviction following trial or a guilty plea. *Gimmy*, 645 P.2d at 267 (citing *People v. Goodwin*, 197 Colo. 47, 593 P.2d 326 (1979)). Entry of guilty pleas to multiple offenses during the same proceeding satisfies the requirement of "charges separately brought and tried" where the "predicate convictions arose from charges which, had they not been adjudicated through the entry of guilty pleas, would have been tried separately." *Id.*

## C.     Discussion

¶ 39     The parties do not dispute that defendant had previously been convicted of three felonies that were separately filed under different case numbers. Defendant argues, however, that because the two cases charging him with distribution of a Schedule II controlled substance were joined for trial under Crim. P. 13, they would have been tried together had he not entered guilty pleas and, thus, his

previous convictions for distribution should be treated as one conviction for habitual criminal purposes.

¶ 40     The People argue that because the charges were for separate and distinct criminal episodes under the mandatory joinder statute, *see* § 18-1-408(2), C.R.S. 2018, they could have been tried separately. Because the offenses occurred a month and a half apart, the People argue that this was not one ongoing criminal episode and that, because the two charges and two cases were joined permissively, they should not be considered one conviction under the habitual criminal sentencing statute.

¶ 41     Even if we assume that the charges arose out of separate and distinct criminal episodes and therefore *could have been* tried separately, where, as here, the charges were joined for trial — albeit permissively — and *would have been* tried together but for defendant's guilty pleas, the plain language of the habitual criminal sentencing statute and Colorado Supreme Court precedent require us to consider defendant's convictions for distribution as one conviction under the habitual criminal sentencing statute. *See* § 18-1.3-801(2)(a)(I) ("[E]very person convicted in this state of any felony, who has been three times previously convicted, upon

17

charges separately brought *and* tried, *and* arising out of separate and distinct criminal episodes, . . . of a felony . . . shall be adjudged an habitual criminal . . . .") (emphasis added); *Gimmy*, 645 P.2d at 267 ("Where the charges against the defendants were separately brought and *would have been tried separately* but for the defendants' decisions to enter guilty pleas, the convictions thereby obtained satisfy the definition of predicate felonies in the habitual criminal statute."); *see also Brown v. Dist. Court*, 197 Colo. 219, 222, 591 P.2d 99, 100-01 (1979) (noting the District Attorney's argument that "if the seven informations were tried separately they could serve as the basis for a habitual criminal proceeding, but if tried together they could not," the supreme court nevertheless concluded that the trial court's consolidation of informations on the defendant's motion was within its sound discretion).

¶ 42    The record makes clear that defendant's predicate felonies were permissively joined for trial, and that the prosecutor planned to try both charges together. At a pretrial hearing on defendant's distribution charges, the prosecutor requested that the court join the cases based on her intent to admit evidence from both cases in each trial under CRE 404(b) "as evidence of modus operandi,

18

common plan [or] scheme, intent, and . . . lack of mistake."  Over defendant's objection, the court ordered the "consolidation of the two cases for trial" and set a single trial date.  The day before the case went to trial, defendant pleaded guilty to both charges.

¶ 43 We conclude that even if the charges could have been tried separately, they would have been tried together but for defendant's guilty pleas.  *See Gimmy*, 645 P.2d at 267.  We are further persuaded by the language of Crim. P. 8 and 13.  Crim. P. 8 provides for joinder of offenses, and Crim. P. 13 provides for joinder of indictments and informations.  Both rules contemplate a single trial.  Crim. P. 13 explicitly states, "[t]he procedure shall be the same as if the prosecution were under such single indictment, information, complaint, or summons and complaint."  We therefore conclude that the trial court erred when it determined that the permissive nature of the joinder, as compared to mandatory joinder, rendered the charges separately brought and tried under the habitual criminal sentencing statute.  The mandatory joinder rule is relevant to whether the convictions arose out of separate and distinct criminal episodes, *see People v. Jones*, 967 P.2d 166, 169

(Colo. App. 1997), but there is no authority for its application to the "separately brought and tried" element of the statute.

¶ 44    Under the mandatory joinder statute, § 18-1-408(2), if the prosecuting attorney elects to proceed on several known offenses, all such offenses "must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode." Crim. P. 8(a)(1) employs the same language as the mandatory joinder statute. But under subsection (a)(2) of the Rule, which is titled "permissive joinder," "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged . . . are of the same or similar character or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Crim. P. 8(a)(2). Thus, joinder is mandatory where the offenses arise from the same criminal episode, but joinder is permissive where the offenses arise from broader circumstances that do not necessarily constitute one criminal episode.

¶ 45    The supreme court has interpreted "[a] series of acts arising from the same criminal episode" as including "physical acts that are

20

committed simultaneously or in close sequence, that occur in the same place or closely related places, and that form part of a schematic whole." *Jones*, 967 P.2d at 169-70 (quoting *Jeffrey v. Dist. Court*, 626 P.2d 631, 639 (Colo. 1981)). This meaning also applies "[i]n determining the quantum of proof required to show separate and distinct criminal episodes in an habitual criminal proceeding." *Id.* at 169.

¶ 46    Considering these statutes and rules together, the reader would conclude that, if two or more offenses arose out of separate criminal episodes, but were of a similar character, they *could* be joined together for trial, yet such joinder would not be required. *See* Crim. P. 8(a)(2). Under that scenario, the two separate offenses, if they were tried separately and resulted in felony convictions, could qualify as separate predicate felonies for purposes of the habitual criminal sentencing statute. *See* § 18-1.3-801(2)(a)(I). However, the "separately brought" element, which requires a showing that the convictions arose out of separate criminal incidents, and the "separately tried" element remain distinct elements and each must be proved beyond a reasonable doubt.

¶ 47    In sum, the People's focus on whether the joinder was mandatory or permissive is misplaced.  Instead, the focus is properly on whether the charged offenses would have been tried separately.  Because the offenses here were, in fact, joined for trial, they would not have been tried separately.  Therefore, under *Gimmy*, defendant was not eligible for habitual criminal sentencing based on those convictions.

¶ 48    The habitual criminal sentencing statute and *Gimmy* require that the prosecution prove beyond a reasonable doubt that defendant's predicate felony convictions were separately brought and would have been separately tried had defendant not entered guilty pleas.  *See* § 18-1.3-801(2)(a)(I); *Gimmy*, 645 P.2d at 267.  Because the People failed to meet their burden to prove these facts, defendant's adjudication as a habitual criminal is reversed, as is his sentence for that adjudication.

## V.    Conclusion

¶ 49    The judgment of conviction is affirmed.  The case is remanded for the trial court to impose a new sentence in accordance with this opinion and to correct the mittimus.

JUDGE J. JONES and JUDGE NIETO concur.

22