24CA0618 Peo v Miedema 08-28-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0618
Lincoln County District Court No. 22CR31
Honorable H. Clay Hurst, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Mitchell A. Miedema,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 28, 2025

Philip J. Weiser, Attorney General, Leo T. Nguyen, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Molly K. Turner, Deputy State Public Defender, Castle Rock, Colorado, for Defendant-Appellant

¶ 1     Defendant, Mitchell A. Miedema, appeals the judgment of conviction entered after a jury found him guilty of a misdemeanor harassment charge.  We affirm.

## I.     Background

¶ 2     Based on the evidence presented at trial, the jury could have found the following facts.

¶ 3     Miedema lived with his romantic partner, N.A., and her two children.  N.A. loaned a smartphone to Miedema, which he used to message his ex-girlfriend.  N.A. discovered the messages and decided to confront Miedema about them.

¶ 4     Miedema was still texting his ex-girlfriend when N.A. confronted him.  N.A. tried to grab the phone out of his hand, and in response, Miedema choked her.  When he stopped, N.A. retreated to her bedroom and locked the door.

¶ 5     The next morning, N.A. dropped her children off at school and then went to Big R, her place of employment.  When N.A. arrived at Big R, she told a coworker, Josh Furman, what had happened.  Furman was a state trooper who worked at Big R while off duty.  He told N.A. that he was a "mandatory reporter" and that she should tell the police about the incident.

¶ 6     From there, N.A. went to the police, where she described the incident to Limon Chief of Police Lynn Yowell and Officer Jacob Herrera.  Two weeks later, she filed a victim impact statement with the Eighteenth Judicial District Attorney's Office.  According to her later testimony, N.A. never advised the officers, nor wrote in her victim impact statement, that she had been advised by anyone to report the incident to the police.

¶ 7     Miedema was arrested on charges of second degree and third degree assault.  The prosecution later added another second degree assault charge and a harassment charge.  The prosecution dropped the felony charges before trial, and the jury found Miedema guilty of a single count of harassment.  He was sentenced to six months in jail suspended upon the successful completion of two years of supervised probation, running consecutively to his sentence in a separate case.

## II.    Issues on Appeal

¶ 8     Miedema contends that the district court erred (1) when it failed to sanction the prosecution for an alleged Crim. P. 16 violation and (2) by admitting several out-of-court statements made

by Miedema's ex-girlfriend without calling her as a witness at trial in violation of the Confrontation Clause.

### A. Alleged Crim. P. 16 Violation

¶ 9 Miedema first contends that the court erred by declining to sanction the prosecution for violating Crim. P. 16 based on its allegedly late disclosure that N.A. had told Furman about the incident before reporting it to the police. He claims further that the delayed notification prevented the defense from effectively preparing for trial and that any remedy short of dismissal would have unfairly required Miedema to waive speedy trial. We are not persuaded.

### 1. Additional Facts

¶ 10 On the day that trial began, the prosecutor disclosed to Miedema's attorney that, when N.A. arrived at Big R the morning after the incident, she told Furman what had happened. The prosecutor also disclosed that Furman was an off-duty state trooper and that he had told N.A. that he was a mandatory reporter and that she should tell the police about the incident.

¶ 11 Although the prosecution had endorsed Furman as a potential witness more than nine months before trial, defense counsel contended that the prosecution had nonetheless violated its Crim.

P. 16 discovery obligations by not disclosing the details of the conversation sooner and argued that Miedema was prejudiced because those details could impact N.A.'s credibility. Defense counsel asked the court to dismiss the charges as a sanction because granting a continuance to allow the defense to follow up on the newly disclosed information would force Miedema to choose between his speedy trial right and his right to a fair trial.

¶ 12    The court declined to impose sanctions, finding that there was no Crim. P. 16 violation because Furman had been disclosed as a potential witness and, in an earlier motion, the defense indicated that it planned to interview him. Moreover, there appeared to be no written report about the conversation between N.A. and Furman. The court also noted that more than a month remained before the expiration of Miedema's statutory speedy trial deadline, and it further confirmed that Miedema did not wish to delay the trial in order to have the opportunity to investigate the new evidence.

### 2.    Standard of Review and Applicable Law

¶ 13    We review a trial court's evidentiary rulings for an abuse of discretion. *Campbell v. People*, 2019 CO 66, ¶ 21. A trial court abuses its discretion when its ruling is manifestly arbitrary,

unreasonable, or unfair, or when it misapplies the law. *People v. Williams*, 2019 COA 32, ¶ 21.

¶ 14    In every criminal case, the parties are obligated to disclose certain information before trial. *See* Crim. P. 16. "By permitting the prosecution and defense to obtain relevant information prior to trial," our supreme court has explained, "[the discovery rules] promote fairness in the criminal process by reducing the risk of trial by ambush." *People v. Grant*, 2021 COA 53, ¶ 20 (quoting *Lanari v. People*, 827 P.2d 495, 499 (Colo. 1992)).

¶ 15    As relevant to Miedema's appellate arguments, Crim. P. 16 requires the prosecution to disclose "any material or information within [its] possession or control which tends to negate the guilt of the accused as to the offense charged." Crim. P. 16(I)(a)(2). The prosecution's disclosure obligation extends to information "in the possession or control" of "any others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported," to the prosecution. Crim. P. 16(I)(a)(3); *Grant*, ¶ 22. The rule requires that such information be produced "as soon as practicable but not later than 35 days before trial." Crim. P. 16(I)(b)(3). If a discovery

violation occurs, the trial court determines an appropriate sanction. *People v. Acosta,* 2014 COA 82, ¶ 13.

### 3.    Analysis

¶ 16     Miedema contends that information about N.A.'s conversation with Furman was subject to the disclosure requirements of Crim. P. 16(I)(a)(2).  He also asserts that, because of Furman's employment as a state trooper, Furman's participation in the conversation, as well as Yowell's alleged knowledge of it, triggered the prosecution's disclosure obligations under Crim. P. 16(I)(a)(3). By failing to disclose anything about the conversation until the first day of trial, Miedema argues, the prosecution violated the disclosure deadline set forth in Crim. P. 16(I)(b)(3).

¶ 17     At the threshold, it is not at all clear that information about N.A.'s conversation with Furman would have "tend[ed] to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."  Crim. P. 16(I)(a)(2).  While Miedema asserts that it was "information relevant to the credibility of a key witness" — which can be exculpatory, *see People v. Braunthal,* 31 P.3d 167, 174-75 (Colo. 2001) — he also acknowledges that "[n]obody knows exactly what [N.A. and Furman]

6

spoke about" during their interaction at Big R. Moreover, he concedes that "it is possible that [N.A.'s] statements to [Furman] were entirely consistent with her later statements to police," and that Furman might not have offered "coaching [or] advice about how she should file the report." In other words, Miedema's assertion that information about the conversation had apparent exculpatory value and was thus subject to the disclosure requirements of Crim. P. 16(I)(a)(2) is entirely speculative. But a "conclusory and speculative" claim that withheld evidence has apparent exculpatory value is not enough to require disclosure. *People v. Eason*, 2022 COA 54, ¶ 48 (collecting cases).

¶ 18 Regardless, even if information about N.A.'s conversation with Furman did have apparent exculpatory value, the prosecution did not have any obligation to disclose it under Crim. P. 16(I)(a)(3).

¶ 19 Miedema contends that disclosure was required because (1) Furman is a state trooper based in the Eighteenth Judicial District, and, in that capacity, he "regularly report[s]" to the District Attorney's office; and (2) Furman "participated in the . . . evaluation of the case" when he heard N.A.'s initial statement and told her to file a police report. As a Colorado state trooper, however, Furman is

employed by a state agency, *see* §§ 24-33.5-201(2), -212, C.R.S. 2025, and nothing in the record suggests that Furman "regularly reports" to the Eighteenth Judicial District Attorney's Office. Nor does the record suggest that Furman acted as an arm of the prosecution team in this case such that the prosecution might be considered to be in constructive custody of information concerning the conversation between Furman and N.A. *See Solano v. Newman,* 2024 COA 93M, ¶¶ 29, 35 (a prosecutor is in constructive custody of information from government entities that assisted the prosecution with the criminal investigation against a defendant).

¶ 20    Nor does Miedema point us to any statutory, regulatory, or department policies that could have triggered a temporary reporting relationship, such as Furman's duty as a mandatory reporter. *See, e.g.,* § 19-3-304, C.R.S. 2025 (persons required to report child abuse or neglect); § 18-6.5-108, C.R.S. 2025 (persons required to report mistreatment of at-risk elders and at-risk adults with intellectual disabilities); § 12-240-139, C.R.S. 2025 (requiring

certain medical professionals to report domestic abuse).[1] Accordingly, even if Furman "participated in the . . . evaluation of the case" when he listened to N.A. and advised her to report the incident (and assuming that information about the conversation had apparent exculpatory value), the disclosure requirements of Crim. P. 16(I)(a)(3) would not have applied.

¶ 21   As to Chief Yowell, Miedema cites no record evidence suggesting that Chief Yowell was aware of the initial conversation between Furman and N.A. Rather, the record demonstrates only that defense counsel speculated that "there [was] a real possibility here that Chief Yowell knew this information and that it wasn't disclosed to us, and that's why the People moved to endorse." But even this speculation is undercut by the record: N.A. testified at trial that she never informed the police that she had been advised to report the incident.

---

[1] Although Furman appears to have told N.A. that he was a "mandatory reporter" due to his employment as a peace officer, it is not clear which, if any, mandatory reporting statute would have applied under the circumstances here, and the record does not reflect that he ever directly reported the conversation to the police.

¶ 22     Under these circumstances, we cannot conclude that the district court abused its discretion when it concluded that the prosecution had complied with its disclosure obligations.

### B.     Alleged Confrontation Clause Violation

¶ 23     Miedema next argues the district court violated his confrontation rights when it admitted text messages between himself and his ex-girlfriend.  We disagree.

### 1.     Additional Facts

¶ 24     At trial, the prosecution moved to admit the following unredacted screenshot of a conversation between Miedema and his ex-girlfriend into evidence:



Text Message Conversation

¶ 25 The prosecution argued that Miedema's statements — which appear on the right side of the text chain — were admissible as nonhearsay under CRE 801(d)(2)(A) and that the ex-girlfriend's

statements were admissible under the rule of completeness, CRE 106. Counsel maintained, however, that the ex-girlfriend's statements included in the screenshot were not hearsay because they were not offered for the truth of the matter asserted. Defense counsel objected, claiming that the ex-girlfriend's messages were inadmissible hearsay that violated Miedema's Confrontation Clause rights. The court admitted the statements under CRE 801(d)(2)(A) and CRE 106, and rejected Miedema's Confrontation Clause argument.

2. Standard of Review and Applicable Law

¶ 26 Appellate review of a possible Confrontation Clause violation is de novo. *Bernal v. People*, 44 P.3d 184, 198 (Colo. 2002).

¶ 27 Hearsay evidence is not admissible except as provided by the Colorado Rules of Evidence or other rules or statutes. CRE 802. Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c).

¶ 28 CRE 106 provides that "[w]hen a statement or part thereof is introduced by a party, an adverse party may require introduction of any other part . . . which ought in fairness to be considered

12

contemporaneously with it. The adverse party may do so over a hearsay objection." *See also People v. McLaughlin*, 2023 CO 38, ¶ 27 ("[B]y its plain language, CRE 106 contemplates that the proponent of the original evidence that creates a misleading impression is also the proponent of the additional evidence that ought in fairness to be considered contemporaneously with the original evidence."). Evidence admitted under the rule of completeness remains subject to the considerations of relevance and prejudice required under CRE 401 and CRE 403. *Id.* at ¶ 33.

¶ 29 The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; Colo. Const. art. II, § 16. Because the provision applies to "witnesses" against the accused, the Confrontation Clause is implicated only when "testimonial" hearsay statements are at issue. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). A testimonial statement is one made "under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Nicholls v. People*, 2017 CO 71, ¶ 22 (citing *Crawford*, 541 U.S. at 51-53).

### 3.   Analysis

¶ 30    Miedema concedes that his own statements in the text chain were admissible nonhearsay under CRE 801(d)(2)(A) and that the ex-girlfriend's statements could have qualified for admission under CRE 106.  But he asserts that, even if the ex-girlfriend's statements were admissible under the rules of evidence, they still should have been excluded because they were testimonial and thus violated his confrontation rights absent the ex-girlfriend's appearance to testify at trial.

¶ 31    Miedema's arguments fail on two independent grounds.  First, even if the Confrontation Clause was triggered, the ex-girlfriend's statements were not testimonial.  Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of an interrogation is to establish or prove past events potentially relevant to later criminal prosecution.  *Michigan v. Bryant*, 562 U.S. 344, 358 (2011).  Here, there was no police involvement in the text chain at all, *see Ohio v. Clark*, 576 U.S. 237, 246 (2015) (explaining statements to individuals who are not law enforcement officers are much less likely to be testimonial than statements to law enforcement officers),

and no reasonable reading of the exchange could support a conclusion that it was the functional equivalent of an interrogation. Accordingly, none of the challenged statements were testimonial and their admission did not implicate the Confrontation Clause.

¶ 32    Second, the ex-girlfriend's statements were not hearsay at all, and thus did not raise confrontation concerns. *See People v. Abad*, 2021 COA 6, ¶ 68 ("Although the admission of testimonial hearsay implicates a defendant's confrontation rights under the Federal and Colorado Constitutions, the admission of nonhearsay does not."). When offering the exhibit, the prosecutor argued that the ex-girlfriend's messages provided context for the inculpatory statements made by Miedema. In other words, the prosecutor was not admitting the ex-girlfriend's statements to prove the truth of the matter asserted. We agree that this is the role that they played; accordingly they were not hearsay.

### III.    Disposition

¶ 33    The judgment of conviction is affirmed.

JUDGE WELLING and JUDGE JOHNSON concur.

15