23CA0240 Peo v Williams 12-18-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0240
El Paso County District Court No. 20CR5373
Honorable Scott Bradford Epstein, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Chad Roshawn Williams,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Adrienne R. Teodorovic, Alternate Defense Counsel, Windsor, Colorado, for Defendant-Appellant

¶ 1 Defendant, Chad Roshawn Williams, appeals his convictions for aggravated robbery, conspiracy to commit aggravated robbery, theft, felony menacing, and conspiracy to commit felony menacing. He also appeals his habitual criminal adjudication and sentencing. We affirm the judgment.

## I. Background

¶ 2 In September 2020, two men entered a bank under the pretense of opening an account. One of them, Williams, was disguised as a woman, carrying a purse and wearing a wig. Williams's co-conspirator grabbed Williams's purse and ordered the bank manager to "[d]o exactly what [she was] told and nobody will get hurt," warning that there was "a gun in [Williams's] purse." The two then robbed the bank and "rammed" their way out of the locked entrance door, escaping with just under $35,000.

¶ 3 During their investigation, officers believed the female-presenting robber was Williams due to a distinct bowlegged gait that they knew Williams to have through other robbery investigations in which he was involved. When officers searched Williams's mother's home, they found a black wig and high-top sneakers resembling those worn by the female-presenting robber.

1

¶ 4      The State charged Williams with four counts each of aggravated robbery, conspiracy to commit aggravated robbery, and theft; five counts each of felony menacing and conspiracy to commit felony menacing; and two habitual criminal counts. Additionally, Williams had a "host of cases" pending in the same jurisdiction.

## II.      Speedy Trial

¶ 5      Williams contends that his statutory right to a speedy trial under section 18-1-405, C.R.S. 2025, was violated when the trial court set all his cases for trial on the same date. He reasons that the court's setting practice, along with the prosecution's subsequent release of its witnesses, failed to comply with the statute's requirement that he be tried within the speedy trial deadline. We disagree and conclude that defense counsel waived Williams's right to a speedy trial by agreeing to set all his cases for trial on the same day.

### A.      Additional Facts

¶ 6      At the time of trial, Williams had nine pending felony cases. Beginning on March 29, 2021, defense counsel asked to "set all the matters for trial." Counsel also agreed to the court's suggestion to

2

set all cases for trial on the same day.  The court then set the trials for June 28 without objection.

¶ 7     On May 13, the parties met again and confirmed that all of Williams's cases were set for trial on June 28.  When June 28 arrived, Williams announced that he was not ready for trial and raised a potential conflict of interest with his counsel.  Ultimately, Williams chose to continue with his counsel and waived his right to a speedy trial.  The court then set a new trial date of December 13.

¶ 8     On September 16, the court called all nine cases and defense counsel informed the court that Williams waived his right to a preliminary hearing in three of the nine cases.  The parties kept the trial date and added a disposition date for October 21.

¶ 9     On October 21, the parties were unable to reach a disposition in this case.  The trial court confirmed that Williams had five cases set for trial in December (including this case) and the remaining four cases set for trial on March 21, 2022.  The prosecution expressed concern that so many of Williams's cases set for trial were "all bunched together" in December.  Defense counsel responded that she would accept a late February date even though it would put her "right on the heels of a two-week homicide" trial.

The court moved the case with the longest speedy trial deadline (not the case at issue here) to February 22 and scheduled a pretrial readiness conference for February 3.

¶ 10    On December 9, the parties appeared for a pretrial readiness conference for five of Williams's cases, including this case.[1]  Both parties announced they were ready and agreed to begin with the oldest case.  The court said that this case would not begin on December 13 and that witnesses need not appear.

¶ 11    On December 13, trial began in Williams's oldest case.  The parties discussed resetting the remaining cases since Williams could only attend one trial that day.  The court reset the other trials for March 28 and asked defense counsel whether she "want[ed] to reset all of them for the same date" or "reset one of them and have the others trail."  Counsel asked the court to "reset all of them" and confirmed that March 28 would be the trial date for "all the cases not going on today."

---

[1] The record shows that Willimas resolved three of his cases at the dispositional hearing in October and that one other case remained set for trial in February 2022.

¶ 12    On February 10, 2022, the parties appeared for a status conference. Defense counsel notified the court that she was having coverage issues because her contract was expiring and that new counsel would be taking over all of Williams's cases. Counsel said the new counsel would not be ready for the February 22 trial date.

¶ 13    On February 17, defense counsel informed the court that her contract had been extended, and she would remain on Williams's oldest case, but she would not be ready for trial on February 22 due to witness availability issues. The court granted the defense a continuance and reset the trial for March 28.

¶ 14    On February 24, the court called all of Williams's remaining cases and new counsel appeared with Williams. Counsel declined to waive Williams's speedy trial rights in any of the cases and asked for additional dates that would work for the court. The court asked defense counsel whether the previously set March 28 date worked for the remaining cases and counsel responded, "That's actually perfect." At the March 10 pretrial readiness conference, the parties announced that they were ready to proceed on all cases. The prosecution requested an additional status conference, which the court set for March 24.

¶ 15    On March 24, the parties again announced that they were ready for the March 28 trial date.  The court noted that only one case could proceed to trial on March 28, and the remaining cases would need to be reset.  The parties agreed to resolve any speedy trial scheduling issues on March 28.

¶ 16    On March 28, the prosecution announced it was not ready to proceed because one of the witnesses failed to appear.  The court explained that when defense counsel "request[s] for all the trials to be set on a certain date, it is not incumbent on the [c]ourt or upon the district attorney to insist that they be set on different dates so that way potentially speedy [trial deadlines do] not run on one particular [day]."  The court then informed the parties that a new speedy trial deadline for all cases would run from March 28 to accommodate the missing witness.  The trial court offered numerous different dates to accommodate counsel's schedule, but counsel replied, "Your Honor, unfortunately, I think I have to set all the cases on [September] 18th."  The court set all cases for trial in September without objection.

¶ 17    On August 4, the court clarified its earlier ruling on the speedy trial deadlines, explaining that Williams could not have appeared

for trial in all cases on March 28, thereby triggering a speedy trial waiver. As a result, according to the court, the new speedy deadline for all cases was September 28.

¶ 18    The jury trial in this case began on September 22, and the jury convicted Williams of all charges. The court adjudicated him as a habitual offender and sentenced him to forty-eight years in the custody of the Department of Corrections.

### B.    Standard of Review and Applicable Law

¶ 19    We review a district court's grant of a continuance under subsection (6)(g)(I) of section 18-1-405 (the speedy trial statute) for an abuse of discretion. *People v. Trujillo*, 2014 COA 72, ¶ 18. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or it misunderstands or misapplies the law. *People v. Knapp*, 2020 COA 107, ¶ 31.

¶ 20    Colorado's speedy trial statute requires that a defendant be brought to trial within six months of entering a plea of not guilty. § 18-1-405(1). The remedy for a violation of a defendant's statutory speedy trial rights is dismissal of the charges with prejudice. *People v. Taylor*, 2020 COA 79, ¶ 18. But to obtain relief based on a violation of this statute, a defendant must move for dismissal before

7

trial. § 18-1-405(5); *see People v. Desantiago*, 2014 COA 66M, ¶ 14.

"Failure to so move is a waiver of the defendant's rights under [the

speedy trial statute]." § 18-1-405(5); *see People v. Abdu*, 215 P.3d

1265, 1269 (Colo. App. 2009) (noting the defendant's statutory

speedy trial challenge "is barred because [the] defendant never

moved to dismiss the case on speedy trial grounds").

¶ 21     The burden of compliance with the speedy trial statute is on

the district attorney and the trial court. *People v. Chavez*, 779 P.2d

375, 376 (Colo. 1989); *Marquez v. Dist. Ct.*, 613 P.2d 1302, 1303-04

(Colo. 1980); *Harrington v. Dist. Ct.*, 559 P.2d 225, 228 (Colo. 1977)

(finding that a defendant's only obligation under the speedy trial

statute is to move to dismiss prior to trial). But in "computing the

time within which a defendant is brought to trial," certain "periods

of time are excluded," including "[t]he period of any delay caused at

the instance of the defendant." § 18-1-405(6)(f).[2]

---

[2] The General Assembly made minor amendments to the relevant
language of subsection (6) effective June 21, 2021. Ch. 277, sec. 1,
§ 18-1-405(6), 2021 Colo. Sess. Laws 1600. Because the majority
of the events at issue here occurred after the amendments went into
effect, the current version of section 18-1-405(6) is quoted here.

¶ 22    A defendant may waive a statutory right, and such a waiver

need only be voluntary to be valid.  *See People v. Wiedemer*, 852

P.2d 424, 438 (Colo. 1993) (distinguishing between waiver

requirements for rule-based rights and fundamental constitutional

rights).  A defendant's waiver is voluntary when it is not coerced

"either physically or psychologically."  *People v. Walker*, 2014 CO 6,

¶ 16 (quoting *People v. Mozee*, 723 P.2d 117, 121 n.4 (Colo. 1986)).

### C.    Analysis

¶ 23    We conclude that the trial court did not violate Williams's right

to a speedy trial because Williams waived his right by inviting the

multiple continuances granted by the court.

¶ 24    The record shows that Williams pleaded not guilty in this case

on March 29, 2021.  On June 28, Williams waived his right to a

speedy trial because defense counsel remarked that she was not

ready: "We would like to waive speedy and reset the trials."  This

waiver extended the speedy trial deadline to December 28, and

counsel agreed to set this case and the remaining cases for

December 13, knowing that only one case could proceed to trial on

that date.

¶ 25    The record further shows that on December 13, the defense agreed to reset this case (and all remaining cases) to March 28, 2022, and made no speedy trial objection.  Indeed, when the original speedy trial deadline of December 28 expired, defense counsel did not move to dismiss this case for a speedy trial violation, as required by section 18-1-405(5).  As a result, the speedy trial period began anew on December 13, 2021.  *Abdu*, 215 P.3d at 1269.

¶ 26    Additionally, we conclude that defense counsel's agreement to set all cases for trial on March 28, 2022, knowing that Williams could only be present for one, is tantamount to a continuance request attributable to the defense and thus set a new speedy trial deadline of September 28.  *See People v. Arledge*, 938 P.2d 160, 166 (Colo. 1997) ("A defendant should not profit from a delay for which he or she is responsible, and active participation by the defendant in such delay constitutes waiver." (citing *People v. Fleming*, 900 P.2d 19, 20 (Colo. 1995))).  Counsel could have instead requested back-to-back trial dates to try all cases in a timely manner.  *See id.* ("In this sense, similar to waivers of other rights, the waiver of the right to a speedy trial can be inferred from the behavior of the

defendant." (quoting *People ex rel. Gallagher v. Dist. Ct.*, 933 P.2d 583, 588 (Colo. 1997))). Counsel also had the opportunity to object but did not. *See Chambers v. Dist. Ct.*, 504 P.2d 340, 342 (Colo. 1972) ("Failure to object is a factor which may be considered in determining whether a waiver took place."). Because Williams proceeded to trial in this case on September 22 without moving to dismiss, there was no speedy trial violation.

### III. Sufficiency of the Evidence

¶ 27 Williams contends that the prosecution presented insufficient evidence to prove the deadly weapon elements of the aggravated robbery and menacing counts. He reasons that insufficient evidence shows that he was a complicitor in the use of the weapon. We disagree.

### A. Standard of Review and Applicable Law

¶ 28 "[W]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the convictions." *People v. Gray*, 2025 COA 23, ¶ 21 (quoting *People v. Harrison*, 2020 CO 57, ¶ 31).

¶ 29 "At trial, the prosecution has the burden of establishing a prima facie case of guilt through introduction of sufficient

11

evidence." *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). "We employ a substantial evidence test to determine if the evidence presented to the jury is sufficient to sustain a defendant's conviction." *Id.* The substantial evidence test considers "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).

¶ 30    The gist of the crime of conspiracy is an agreement, between two or more persons, to commit or attempt to commit a crime. *See* § 18-2-201(1), C.R.S. 2025. "Conspiracy requires proof of a 'real agreement, combination, or confederation with a common design. (Mere passive cognizance of the crime to be committed or mere negative acquiescence is not sufficient.)'" *People v. Lucero*, 2016 COA 105, ¶ 13 (quoting *Bates v. People*, 498 P.2d 1136, 1138 (Colo. 1972)). But the agreement "need not be formal or susceptible to direct proof, and may be, and indeed must generally be proved circumstantially." *People v. Nelson*, 539 P.2d 477, 479 (Colo. 1975)

12

(citation omitted); *see also United States v. Loveland*, 825 F.3d 555, 561-62 (9th Cir. 2016) (the agreement "can be explicit or tacit").

¶ 31     Complicity "is not a separate and distinct crime or offense. Rather, it is 'a theory by which a defendant becomes accountable for a criminal offense committed by another.'" *Grissom v. People*, 115 P.3d 1280, 1283 (Colo. 2005) (citation omitted). "The requisite knowledge is minimal" and a complicitor-defendant is not required to "have advance knowledge of the principal's intent to commit a crime." *People v. Alvarado*, 284 P.3d 99, 103 (Colo. App. 2011). Indeed, merely "roughly contemporaneous knowledge by the complicitor of the principal's intent" suffices. *Id.* (citing *People v. Wheeler*, 772 P.2d 101, 104 (Colo. 1989)). But "[i]t is not sufficient that the defendant intentionally engaged in acts which ultimately assisted or encouraged the principal. Rather, the complicitor must intend that his conduct have the effect of assisting or encouraging the principal in committing or planning the crime committed by the principal." *Bogdanov v. People*, 941 P.2d 247, 251 (Colo. 1997), *overruled in part on other grounds by, Griego v. People*, 19 P.3d 1, 8 (Colo. 2001).

¶ 32    "[I]t is for the fact finder to determine the difficult questions of witness credibility and the weight to be given to conflicting items of evidence . . . ." *People v. Kessler*, 2018 COA 60, ¶ 12. "[T]he prosecution must be given the benefit of every inference that may fairly be drawn from the evidence . . . ." *Id.* "[I]f there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element . . . ." *Id.* (quoting *People v. Chase*, 2013 COA 27, ¶ 50). Further, "[a] court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings." *People v. Perez*, 2016 CO 12, ¶ 31.

## B.    Analysis

¶ 33    We conclude that the following record evidence, when viewed in the light most favorable to the prosecution, supports the deadly weapon element of Williams's convictions for conspiracy to commit aggravated robbery and felony menacing:

- Williams and his co-conspirator entered the bank together just before closing, claiming that they wanted to open an account.  Williams was disguised as a woman.

14

- The manager asked them to have a seat, and the female-presenting individual set down her purse and walked toward the drive-up area. When the manager told her not to go back there, the individual responded, "I got this," in a deep voice. Hearing the deep voice, the manager realized the person was not a woman and suspected a robbery was imminent.

- As the female-presenting individual walked toward the drive-up, the co-conspirator told the manager, "Don't move," picked up the purse, and threatened, "Do exactly what you're told and nobody will get hurt. I do have a gun in this purse."

- A bank teller and assistant manager working in the drive-up area confirmed that the female-presenting robber told them not to move and that everything would be okay if they stayed still. Both witnesses noted that the individual had a deep voice and did not sound like a woman.

- The electronic banker observed that the manager let the robbers into the bank and heard her tell the female-

presenting robber not to go back to the drive-up area. Upon hearing the deep voice, the electronic banker sensed something was wrong. When the taller robber walked by her office, he told her not to move, or he would shoot her. She could hear both robbers ordering the tellers to empty the drawers and to hurry.

¶ 34     We are not persuaded otherwise by Williams's argument that a bank employee testified she doubted anyone in the back room could hear what was happening in the lobby, and therefore Williams did not know his co-conspirator had said there was a gun in the purse. We reject this argument for three reasons.

¶ 35     First, the jury heard contradictory testimony from the electronic bank manager, who heard the female-presenting robber in the drive-up instruct the tellers to hurry up and empty the drawers at the same time she heard the co-conspirator threaten to shoot her if she moved. And we must resolve evidentiary conflicts in favor of the prosecution. *See Clark*, 232 P.3d at 1291 (citing *Bennett*, 515 P.2d at 469). We conclude that this evidence alone satisfied the prosecution's burden of establishing Williams's complicity in the threatened use of a gun.

¶ 36    Second, the record shows that Williams intentionally left the purse with his co-conspirator as he walked toward the drive-up area. A reasonable inference from this action is that the robbers intended the co-conspirator to use the purse to threaten the existence of a gun without having to reveal one. *Kessler*, ¶ 12.

¶ 37    Third, by deciding to enter the bank together with the intent to commit a robbery, Williams and his co-conspirator agreed to carry out the crime together. *People v. Martinez*, 600 P.2d 82, 83 (Colo. App. 1979) ("As long as a defendant commits robbery with the requisite intent, he may be convicted of aggravated robbery regardless of whether it is he or [his codefendant] who possesses the deadly weapon."). As described above, the record contains ample evidence that Williams and the co-conspirator acted in concert to rob the bank, and Williams does not directly challenge the sufficiency of the conspiracy evidence. *People v. Venzor*, 121 P.3d 260, 264 (Colo. App. 2005) (declining to review issues presented "only in a perfunctory or conclusory manner"). Indeed, Williams carried the purse into the bank, and the co-conspirator used that same purse to threaten the presence of a weapon. Nothing more was required to show a conspiracy or complicity.

## IV.     Habitual Criminal Counts

¶ 38     Williams last contends that the trial court erred when it adjudicated the habitual criminal counts rather than submitting them to a jury.  We are not persuaded.

### A.     Standard of Review and Applicable Law

¶ 39     Typically, we review constitutional challenges to a trial court's sentencing determinations de novo.  *People v. Kirby*, 2024 COA 20, ¶ 55.  However, because Williams did not preserve his constitutional challenge, "we will vacate his sentence[] only if we conclude that the court's error was plain and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the sentence[]."  *Id.*

¶ 40     For a defendant to be viewed as a habitual criminal under section 18-1.3-801(2)(a)(I), C.R.S. 2025, the prosecution must prove beyond a reasonable doubt that the defendant, having been convicted of a felony, "has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes."  *People v. Fields*, 2025 COA 84, ¶ 14 (quoting *People v. Williams*, 2019 COA 32, ¶ 37). "Charges are separately brought where they are 'in separate

informations, with separate docket numbers, arising out of separate criminal incidents.'" *Id.* (quoting *Williams*, ¶ 38). "[A] predicate conviction can result from either a conviction following trial or a guilty plea." *Id.* (quoting *Williams*, ¶ 38). Convictions arising from guilty pleas satisfy the requirement of "separately brought and tried" when the underlying charges "would have been tried separately" if not for the guilty plea. *Id.* (quoting *Williams*, ¶ 38). Prior crimes arise from distinct criminal episodes where they are separated by enough time and have different victims and locations, such that "proof of neither could have formed a substantial portion of the proof of the other." *Id.* (quoting *Marquez v. People*, 2013 CO 58, ¶ 20). The question of separate and distinct criminal episodes demands a jury finding. *People v. Gregg*, 2025 CO 57, ¶ 24 (applying *Erlinger v. United States*, 602 U.S. 821, 838 (2024)).

B.    Analysis

¶ 41    Initially, we agree with Williams that a jury should have determined whether Williams's prior convictions were separately brought and tried and whether they arose out of distinct criminal episodes. *Erlinger*, 602 U.S. at 859; *Gregg*, ¶ 24 (there are no material differences between the separate-offenses inquiry at issue

in *Erlinger* and Colorado's habitual criminal sentencing statute). But, reviewing for plain error, we conclude that any error does not warrant reversal.

¶ 42    An error is plain if it is "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 14. For an error to be obvious, it "must [have] contravene[d] (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law" at the time of trial. *Scott v. People*, 2017 CO 16, ¶ 16 (quoting *People v. Pollard*, 2013 COA 31M, ¶ 40); *see People v. Crabtree*, 2024 CO 40M, ¶ 72. At the time Williams was tried, the trial court was authorized to make determinations in habitual offender proceedings. *See Crabtree*, ¶ 72 ("[R]elief under Crim. P. 52(b) is only available if the error is plain at the time it is made . . . .").

¶ 43    Since *Erlinger*, the Colorado Supreme Court decided *Gregg*. The supreme court held in *Gregg* that Colorado's former habitual criminal sentencing statute is not facially unconstitutional and can operate within the additional limits set forth in *Erlinger*. *Gregg*, ¶ 3. The court also held that *Erlinger* applies to Colorado's habitual criminal sentencing statute and "the question of separate and distinct criminal episodes demands a jury finding." *Id.* at ¶ 24.

20

¶ 44    Applying *Gregg*, we conclude there is no reasonable possibility that the trial court's error in deciding the prior conviction elements contributed to Williams's habitual criminal convictions. *See Fields*, ¶ 16 (citing *United States v. Butler*, 122 F.4th 584, 590 (5th Cir. 2024), which held that *Erlinger* error was harmless beyond a reasonable doubt where the record clearly showed that the prior offenses spanned a range of months to years and involved different parties). The record shows that the court relied on (1) fingerprint cards from separate cases; (2) testimony that the fingerprints from all cases matched; (3) court documents from separate cases; (4) Williams's guilty pleas in separate cases; (5) photographs from separate cases showing the same person; and (6) same names and dates of birth from separate cases. Under the authority available to the court at the time of trial, the prosecution presented proper and sufficient evidence to prove the habitual criminal counts, and the trial court properly found Williams guilty of both counts. Given the strength of this evidence, a jury would not have concluded differently. *See Fields*, ¶ 16 (Concluding that it was harmless error for the trial court to find the defendant guilty of habitual criminal counts where the court "[could not] imagine a scenario in which a

jury could have found that [the defendant's] prior offenses occurred as the same criminal episode" so as not to meet habitual offender requirements.) Accordingly, any error does not rise to the level of plain error.

## V. Disposition

¶ 45 The judgment is affirmed.

JUDGE PAWAR and JUDGE YUN concur.